Bruce J. KAISER, Plaintiff-Respondent-Petitioner,

v.

BOARD OF POLICE & FIRE COMMISSIONERS OF the CITY OF WAUWATOSA, Wisconsin, and Roy E. Wellnitz, Chief of Police, Wauwatosa, Wisconsin, Defendants-Appellants.

Supreme Court

*No. 80–774. Argued October 7, 1981.—Decided November 3, 1981.*

(Also reported in 311 N.W.2d 646.)

For the petitioner there was a brief (in court of appeals) by *Thomas E. Brown* and *Gimbel, Gimbel & Reilly* and oral argument by *John O. Skagerberg,* all of Milwaukee.

For the defendants-appellants there were briefs (in court of appeals) and oral argument by *Harold D. Gehrke,* city attorney, of Wauwatosa.

STEINMETZ, J.   The issue in this case is whether a probationary employee is entitled to the procedural guar-

antees outlined in sec. 62.13 (5), Stats.[1] The court of appeals held he was not so entitled and we affirm.

On March 21, 1978, Bruce J. Kaiser was appointed as a probationary police officer on the Wauwatosa Police Department. He was to remain on probation for one

[1] Sec. 62.13 (5), Stats., provides:

"(5) DISCIPLINARY ACTIONS AGAINST SUBORDINATES. (a) A subordinate may be suspended as hereinafter provided as a penalty. He may also be suspended by the commission pending the disposition of charges filed against him.

"(b) Charges may be filed against a subordinate by the chief, by a member of the board, by the board as a body, or by any aggrieved person. Such charges shall be in writing and shall be filed with the president of the board. Pending disposition of such charges, the board or chief may suspend such subordinate.

"(c) A subordinate may be suspended for cause by the chief or the board as a penalty. The chief shall file a report of such suspension with the commission immediately upon issuing the suspension. No hearing on such suspension shall be held unless requested by the suspended subordinate. If the subordinate suspended by the chief requests a hearing before the board, the chief shall be required to file charges with the board upon which such suspension was based.

"(d) Following the filing of charges in any case, a copy thereof shall be served upon the person charged. The board shall set date for hearing not less than 10 days nor more than 30 days following service of charges. The hearing on the charges shall be public, and both the accused and the complainant may be represented by an attorney and may compel the attendance of witnesses by subpoenas which shall be issued by the president of the board on request and be served as are subpoenas under ch. 885.

"(e) If the board determines that the charges are not sustained, the accused, if he has been suspended, shall be immediately reinstated and all lost pay restored. If the board determines that the charges are sustained, the accused, by order of the board, may be suspended or reduced in rank, or suspended and reduced in rank, or removed, as the good of the service may require.

"(f) Findings and determinations hereunder and orders of suspension, reduction, suspension and reduction, or removal, shall

year before he would be eligible to become a permanent officer. By the fall of 1978, Chief of Police, Roy E. Wellnitz (Chief), had decided that Kaiser was not qualified to serve as a police officer. This was largely due to reports of his hostile attitude toward the public. The Chief's attention had been brought to a problem with Kaiser's attitude through reports from citizens and police officers who had dealt with Kaiser, as well as through the Chief's own contact with Kaiser.

be in writing and, if they follow a hearing, shall be filed within 3 days thereof with the secretary of the board.

"(g) Further rules for the administration of this subsection may be made by the board.

"(h) No person shall be deprived of compensation while suspended pending disposition of charges.

"(i) Any person suspended, reduced, suspended and reduced, or removed by the board may appeal from the order of the board to the circuit court by serving written notice thereof on the secretary of the board within 10 days after the order is filed. Within 5 days thereafter the board shall certify to the clerk of the circuit court the record of the proceedings, including all documents, testimony and minutes. The action shall then be at issue and shall have precedence over any other cause of a different nature pending in said court, which shall always be open to the trial thereof. The court shall upon application of the accused or of the board fix a date of trial, which shall not be later than 15 days after such application except by agreement. The trial shall be by the court and upon the return of the board, except that the court may require further return or the taking and return of further evidence by the board. The question to be determined by the court shall be: Upon the evidence was the order of the board reasonable? No costs shall be allowed either party and the clerk's fees shall be paid by the city. If the order of the board is reversed, the accused shall be forthwith reinstated and entitled to his pay as though in continuous service. If the order of the board is sustained it shall be final and conclusive.

"(j) The provisions of paras. (a) to (i) shall apply to disciplinary actions against the chiefs where applicable. In addition thereto, the board may suspend a chief pending disposition of charges filed by the board or by the mayor of the city."

The Chief, having decided on the termination, consulted with the Police and Fire Commission for the City of Wauwatosa and received their approval to proceed.

On November 9, 1978, Kaiser was informed by the Chief that his probationary service was being terminated. The reasons for termination were not listed in the notification. Kaiser requested that reasons be given for his termination and demanded a hearing before the commission on the matter of termination. The commission refused to give reasons or grant a hearing in regard to his termination.

Kaiser subsequently, on March 5, 1979, petitioned the trial court for a writ of mandamus ordering his reinstatement and/or the issuance of charges and a hearing pursuant to sec. 62.13(5), Stats. The circuit court of Milwaukee county, by Circuit Judge Laurence C. Gram, Jr., granted the relief sought by Kaiser. The court of appeals reversed.

Sec. 165.85 (4) (b), Stats., reads as follows:

"(b) No person may be appointed as a law enforcement officer, *except on a temporary or probationary basis,* unless the person has satisfactorily completed a preparatory program of law enforcement training approved by the board and has been certified by the board as being qualified to be a law enforcement-officer. The program shall include at least 240 hours of training. The specific curriculum of the 240-hour preparatory program shall be promulgated by the board as a rule under ch. 227. The rule shall ensure that there is an adequate amount of training to enable the person to deal effectively with domestic abuse incidents. The period of temporary or probationary employment established at the time of initial employment shall not be extended by more than one year for an officer lacking the training qualifications required by the board. . . ." (Emphasis added.)

The board referred to in sec. 165.85, Stats., is the law enforcement standards board (sub. (2) (a)).

In addition to the necessity of placing Kaiser in a pro-

bationary status pursuant to sec. 165.85 (4) (b), Stats.,[2] the collective bargaining agreement between the City of Wauwatosa and its nonsupervisory police officers provided for probationary police officer status in Art. IV as follows:

"An employee shall be probationary and not entitled to any seniority rights until after the completion of one calendar year of service. *No claim or grievance shall be made by the NSU or the employee with respect to layoff or discharge of the employee during such period of probation.* If the employee shall be continued in the employ of the City after completion of the probationary period, his length of service shall be computed from his date of last hire." (Emphasis added.)

(NSU refers to the Wauwatosa Professional Policemen's Nonsupervisory Bargaining Unit.)

This agreement was entered into pursuant to sec. 111.-70 (2), Stats.,[3] allowing municipal employees, including its police officers, to enter into collective bargaining agreements.

Sec. 62.13 (5), Stats., applies to disciplinary actions and convincingly reads: "DISCIPLINARY ACTIONS AGAINST SUBORDINATES. (a) A subordinate may be suspended as hereinafter provided as a penalty. . . ."

Kaiser reasons that since he is a subordinate, he is entitled to the procedures of sec. 62.13 (5), Stats. This

---

[2] There is no claim Kaiser had the requisite training or status to be hired as other than a probationary officer.

[3] Sec. 111.70 (2), Stats., provides in pertinent part:

"(2) RIGHTS OF MUNICIPAL EMPLOYES. Municipal employes shall have the right of self-organization, and the right to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection, and such employes shall have the right to refrain from any and all such activities except that employes may be required to pay dues in the manner provided in a fair-share agreement. . . ."

fails to recognize that he was hired as a probationary officer. Sec. 165.85(4)(b) limited his hiring as a probationary officer and by the terms of the collective bargaining agreement, he did not have the right to make a claim or grievance as a result of discharge.

The term "subordinate" is not statutorily defined. The common meaning of subordinate as defined in Black's Law Dictionary 1278 (5th ed. 1979) is:

"**Subordinate.** Placed in a lower order, class, or rank; occupying a lower position in a regular descending series; inferior in order, nature, dignity, power, importance, or the like; belonging to an inferior order in classification, and having a lower position in a recognized scale; secondary, minor."

As used in the statute, it is a generic term including all police officers. Kaiser was a probationary officer hired pursuant to sec. 165.85(4)(b), Stats., and, therefore, his employment was controlled by his probationary status of that direct provision and not by the general section 62.13(5).

Kaiser was not disciplined; he was terminated as not suited for service as a police officer.

Sec. 62.13(4)(d), Stats.,[4] provides that boards of police shall examine candidates to determine their qualifica-

---

[4] Sec. 62.13(4)(d), Stats., provides:

"The examination shall be free for all U.S. citizens over 18 and under 55 years of age, with proper limitations as to residence, health, habits and character. The examination, including minimum training and experience requirements, shall be job-related in compliance with appropriate validation standards and shall be subject to the approval of the board and may include tests of manual skill and physical strength. All relevant experience, whether paid or unpaid, shall satisfy experience requirements. The board shall control examinations and may designate and change examiners, who may or may not be otherwise in the official service of the city, and whose compensation shall be fixed by the board and paid by the city. Veterans shall be given preference points in accordance with s. 230.16(7)."

tions. The rules governing examination shall be "calculated to secure the best service in the departments."[5] There is no doubt that the use of a probationary period is an excellent means of examining candidates and is well-suited to securing the best service available. It enables the board to better evaluate a potential officer's skill and character. Probation is a continuation of the hiring process.

In examining candidates the board may limit persons on the basis of "residence, health, habits and *character*."[6] (Emphasis added. ) Character was the issue in Kaiser's case. What the Chief had been informed and had reported of Kaiser's hostile nature and brusqueness with the public indicated he was inappropriate for the job. A police officer must be able to deal effectively and respectfully with the public. Kaiser had shown, on the job, that he did not have the attitude properly befitting a good police officer. He was terminated because he was not suitable for the job.

The legislature has recognized the importance of law enforcement personnel and the appointment to such positions of individuals who are able to fulfill the awesome responsibility to the citizens and community. It made this public statement of principle in sec. 165.85(1), Stats.:

"FINDINGS AND POLICY. The legislature finds that the administration of criminal justice is of state-wide con-

---

[5] Sec. 62.13(4) (c), Stats., provides:

"For the choosing of such list the board shall adopt, and may repeal or modify, rules calculated to secure the best service in the departments. These rules shall provide for examination of physical and educational qualifications, habits, reputation, and experience, and may provide such competitive examinations as the board shall determine, and for the classification of positions with special examination for each class. The board shall print and distribute the rules and all changes in them, at city expense."

[6] Sec. 62.13(4) (d), Stats., *supra*.

cern, and that law enforcement work is of vital importance to the health, safety and welfare of the people of this state and is of such a nature as to require training, education and the establishment of standards of a proper professional character. It is in the public interest that such standards be established and that such training and education be made available to persons who seek to become law enforcement officers, persons who are serving as such officers in a temporary or probationary capacity and persons already in regular service."

Kaiser, as a probationary officer, had no more than a unilateral expectation of fulfilling the year and being hired as a permanent officer on the Wauwatosa Police Department. As the United States Supreme Court stated in *Board of Regents v. Roth,* 408 U.S. 564 (1972) :

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims." *Id.* at 577.

In the *Roth* case the following language in the dissenting opinion of Justice Marshall (at 591) was rejected in the majority opinion :

"It may be argued that to provide procedural due process to all public employees or prospective employees would place an intolerable burden on the machinery of government. Cf. *Goldberg v. Kelly, supra.* The short answer to that argument is that it is not burdensome to give reasons when reasons exist. Whenever an application for employment is denied, an employee is discharged, or a decision not to rehire an employee is made, there should be some reason for the decision. It can scarcely be argued that government would be crippled by a requirement that the reason be communicated to the person most directly affected by the government's action."

The U. S. Supreme Court said in *Bishop v. Wood,* 426 U.S. 341, 345, 350 (1976), in the discharge of a police officer " 'who held his position at the will and pleasure of the city' " the following: "The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions."

In *Roth, supra,* at 575, the court stated:

"It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another."

Kaiser did not have a constitutional right, nor statutory right, to a statement of specifications and a hearing on the City of Wauwatosa's decision not to retain him for this nontenured appointment. *Richards v. Board of Education,* 58 Wis. 2d 444, 206 N.W.2d 597 (1973).

*By the Court.*—The decision of the court of appeals is affirmed.

