**Willie L. LEWIS, Plaintiff-Appellant,**

v.

**HILLSBOROUGH TRANSIT AUTHORITY, et al., Defendants-Appellees.**

No. 83–3156

**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Dec. 5, 1983.

Nathaniel W. Tindall, II, Tampa, Fla., for plaintiff-appellant.

Gary Wayne Nicholson, Tampa, Fla., for defendants-appellees.

Before HILL, JOHNSON and HENDERSON, Circuit Judges.

PER CURIAM:

Willie L. Lewis instituted this suit in the United States District Court for the Middle District of Florida, alleging that he had been denied his constitutional rights to due process when he lost his job as a bus driver for the Hillsborough Transit Authority (HTA). 42 U.S.C. § 1983. After a non-jury trial, the district court, finding no constitutional violation, found for the defendants and Lewis appeals. We affirm.

The City of Tampa hired Lewis as a bus driver in 1971. The city and the Amalgamated Transit Union (Union) signed a collective bargaining agreement (agreement) in December, 1979. Tampa and Hillsborough County formed the HTA which took over the operation of the bus system in March, 1980. The agreement, when made, anticipated the formation of HTA and provided that the employees "shall suffer no worsening of their wages, hours, and other conditions of employment . . ." because of the transition. Agreement at Article 42.7. The agreement also set out a grievance procedure, id. at Article 6, and disciplinary provisions, which stipulated in part that if an employee was absent without leave for three consecutive days, he "may be considered as 'resigned without notice.'" Id. at Article 7.4.

Lewis was involved in an accident on June 11, 1981 while driving a bus. He was taken to the hospital and released the same day. Lewis then made an appointment with Dr. Angelo M. Alves, his personal physician, for July 2, 1981. Fireman's Fund Insurance Company (Fireman's Fund), HTA's workmen's compensation carrier, advised Lewis that it had made an appointment for him to see Dr. James Eckart, also for July 2, 1981. Lewis stated that he told Fireman's Fund he did not intend to claim workmen's compensation and asked Fireman's Fund to cancel the appointment with Dr. Eckart. Lewis apparently did not receive the notification of cancellation in time. In any event, he saw both Dr. Eckart and Dr. Alves.

Dr. Eckart found no physical evidence of injury and testified by deposition that he told Lewis he could return to work. Dr. Alves advised Lewis that he should not work for at least a month and gave Lewis a note to this effect. Lewis took Dr. Alves' note to his attorney. Both doctors filed reports with Fireman's Fund. Relying on Dr. Eckart's diagnosis, Fireman's Fund determined that Lewis could return to work and so notified both Lewis and the HTA. Lewis, however, chose to follow Dr. Alves' recommendation and remained off the job. Although Lewis admitted that on previous occasions he had told his employer the reason for his failure to report for work, Lewis never informed the HTA of Dr. Alves' diagnosis. Lewis twice went to the HTA offices to fill out some forms and he spoke to some HTA employees, but he never gave a reason for his absence. Because he had been absent without leave for more than three days, Joseph Moffett, HTA's Manager of Safety and Training, sent Lewis a letter on July 27, 1981, stating that he was considered as having voluntarily resigned under Article 7.4 of the agreement.

Upon receiving the letter, Lewis met with the president of the union local who told Lewis that he could not help him because he had retained an attorney. Lewis' attorney then wrote to Moffett, stating that Lewis had not resigned, but was only following Dr. Alves' advice. The attorney also requested a formal hearing. Moffett replied that, because Lewis had not notified the HTA of Dr. Alves' diagnosis, he was still considered as having resigned. Lewis then filed this suit.

The district court concluded that Lewis had a property interest in continued employment because of his status as a civil servant and his rights under the collective bargaining agreement. The court, however, found no violation of due process because Lewis resigned by his own inaction and was not terminated. Also, even if he had been terminated, Moffett's letter furnished adequate notice of the reasons and

the grievance procedure in the agreement provided Lewis with an effective opportunity to rebut the reasons for his dismissal. *Glenn v. Newman,* 614 F.2d 467 (5th Cir. 1980).

Lewis urges that the mere availability of a post-termination grievance procedure cannot cure the alleged denial of due process. He admits that the grievance procedure, if utilized, could eliminate a constitutional violation. *Id.* To accept Lewis' argument would permit every employee to ignore the elaborate grievance mechanism provided in the agreement and to sue in federal court. In *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the United States Supreme Court held that, although Nebraska may have deprived an inmate of property, the state "has provided respondent with the means by which he can receive redress for the deprivation.... This procedure was in existence at the time of the loss here in question but respondent did not use it." *Id.* at 543, 101 S.Ct. at 1917, 68 L.Ed.2d at 433. Lewis, therefore, had an opportunity to rebut the charges. As the district court stated, "[d]ue process was at Plaintiff's disposal; any deprivation of that due process clearly resulted from Plaintiff's own inaction." Opinion at 5.

Lewis also claims that the union grievance procedure was not open to him because he had elected to use the Tampa Civil Service appeal procedures and the union grievance apparatus was in disarray due to the transition to the HTA. The HTA contends that there is conflicting evidence whether Lewis could proceed under the Tampa Civil Service rules. If Lewis in fact could elect his remedies, that only indicates that he had more, not less, procedural safeguards. With respect to the alleged disarray in the union grievance system, Moffett testified that union members were filing grievances, which were being processed promptly. Transcript at 113. Lewis cannot complain about any alleged deficiencies in the grievance procedure because he did not file a grievance, nor did he show that his failure to file a grievance was the result of

any shortcomings of the grievance provisions.

Because the HTA was not a party to the agreement, Lewis contends that it cannot resort to Article 7.4 to avoid liability. The agreement was in effect between December 2, 1979, and September 30, 1981 and the HTA took over the bus system on March 1, 1980. The City of Tampa, which was a party to the agreement, and Hillsborough County, created the HTA. By its express terms, the agreement contemplated the change of ownership to the HTA. *See* Article 42.7. As the district court held, the HTA correctly applied the procedures mandated by Article 7.4 of the agreement.

Lewis disputes the district court's finding that he resigned. He maintains that the HTA only used Article 7.4 in an effort to terminate him. Lewis had knowledge of the agreement's provisions. He admitted that he had told his employer the reasons for previous absences, that he never notified the HTA of Dr. Alves' diagnosis, and that there was no reason why he did not transmit the contents of the doctor's note to his employer. Transcript at 47. Even if Lewis may not have subjectively intended to resign his job, he did so under the terms of the agreement by his own inaction.

Finally, Lewis challenges as clearly erroneous the district court's finding that the HTA's employees observed nothing to indicate Lewis' inability to work when he came to the offices. Whether it is clearly erroneous does not affect the outcome of this case because the fact remains that Lewis failed to notify the HTA of the reasons for his absence.

The judgment of the district court is AFFIRMED.