**Milan SCHULTZ, Plaintiff-Appellant,**

v.

**Fred BAUMGART, Chief, Waukesha Fire Department, et al., Defendants-Appellees.**

No. 83–2260.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 7, 1984.

Decided July 2, 1984.

Willis B. Swartwout, III, Swartwout & Eichfield, New Berlin, Wis., for plaintiff-appellant.

Michael E. Husmann, Michael, Best & Friedrich, Milwaukee, Wis., for defendants-appellants.

Before CUDAHY and FLAUM, Circuit Judges, and BARTELS, Senior District Judge.*

CUDAHY, Circuit Judge.

This appeal arises from an action brought by a former Wisconsin fire fighter who claims he was discharged in violation of his due process rights. The appeal presents several issues involving the application of the due process clause and 42 U.S.C. § 1983 to public employees. The district court granted summary judgment in favor of all defendants. We affirm in part, reverse in part, and remand for further proceedings.

## I

Plaintiff-appellant Milan Schultz was a fire fighter in Waukesha, Wisconsin, for more than twenty years. On September 25, 1979, the Waukesha Fire Chief, defendant-appellee Fred Baumgart, placed Schultz on paid sick leave after Schultz was hospitalized with chest pains. For several months, Baumgart received a series of brief notes from Schultz's doctor saying that Schultz was unable to return to work. Then, on March 7, 1980, Baumgart sent Schultz a letter which said in full: "This letter is to inform you that effective Monday, March 10, 1980, you will be on vacation. On completion of your vacation, you will return to work, or your employment will be terminated." Schultz did not return to work. He was entitled to two months of vacation, and he continued to receive pay through May 6, 1980. Since then he has received no paychecks and has not returned to work.

Plaintiff's status after May 6, 1980, is disputed. According to plaintiff, he was fired effective May 6, 1980. According to defendant Baumgart, plaintiff remained on the department roster in a "no pay" status until some time in July, when his employment was terminated. According to Baumgart, Schultz was not fired but voluntarily resigned by failing to return to work as Baumgart demanded in his letter of March 7th. Because the case is before us on appeal from summary judgment, we shall view the disputed facts in the light most favorable to plaintiff and determine whether they are material. Therefore, we shall assume for purposes of this appeal that Schultz was fired effective May 6, 1980.[1]

The normal procedure for dismissing a Wisconsin fire fighter is set out in Wis. Stat. § 62.13(5). The fire chief may file written "charges" against a subordinate with the local board of police and fire commissioners, § 62.13(5)(b), and pending disposition of the charges, the chief may suspend the subordinate with pay, § 62.-13(5)(b) and (h).[2] After the chief files charges and notifies the person charged, the board holds a hearing within the next thirty days. The hearing is public, and the person charged has the right to counsel and the power to compel witnesses to attend. § 62.13(5)(d). If the board finds that the charges are sustained, it may take disciplinary action, including dismissal, § 62.-13(5)(e), and its actions are subject to expedited judicial review, § 62.13(5)(i). In this case, Chief Baumgart has never filed charges against Schultz with the board, nor has the board held any hearing regarding the termination of Schultz's employment.

Plaintiff filed this action in the district court on September 4, 1980, against Baumgart, the City of Waukesha, the city Police and Fire Commission (including the individual members), the city attorney and the city comptroller. Plaintiff alleged that the

---

* Honorable John R. Bartels, Senior District Judge for the Eastern District of New York, is sitting by designation.

1. It is also possible (given the present record) that the city fired Schultz effective May 6, 1980, in a retroactive decision made some time in the summer. If that should be the case, the district court should consider the due process problems in light of the principles which govern this opinion.

2. The chief may take lesser disciplinary actions without prior approval of the board. If the chief suspends an employee "as a penalty," he is required to notify the board in writing, and the person suspended may demand a board hearing. § 62.13(5)(c).

defendants had terminated his employment in violation of his federal due process rights, and he asserted claims for damages and equitable relief under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and directly under the fourth, fifth and fourteenth amendments of the Constitution. In an order on April 26, 1982, the district court dismissed all claims except those under 42 U.S.C. § 1983, and it dismissed claims for damages against all defendants except Baumgart. The court concluded that the city and the commission could not be held liable because the complaint did not allege that any unconstitutional actions were taken pursuant to a city policy or custom. *See Monell v. Department of Social Services*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). The district court also concluded that the plaintiff had not alleged the direct participation of any individual defendant except Baumgart. At the same time, because it was not clear whether Schultz resigned or was fired, the district court denied summary judgment on the damages claim against Baumgart and on the claim for reinstatement against Baumgart and the other individual defendants.

Defendants asked the district court to reconsider its decision on the remaining claims. On June 3, 1983, the district court granted summary judgment for defendants on the remaining claims and dismissed the complaint. In its order, the district court noted that there was a factual dispute as to whether plaintiff resigned voluntarily or was instead fired. However, the district court concluded that, even if the plaintiff had been fired, his due process rights had not been violated for two reasons. First, under section 62.13(5) and the collective bargaining agreement for Waukesha fire fighters, an employee may be fired without formal charges and a hearing unless the employee invokes the preliminary stages of the union grievance procedure. Second, although Baumgart never filed charges with the board, Schultz himself had notice of the chief's intended actions and could have requested a hearing before the board. The district court concluded that the availability of these procedures adequately protected plaintiff's rights and held that his failure to invoke either process barred his claims under section 1983.

On appeal, plaintiff challenges the dismissal of all of his claims brought under section 1983. We reverse the dismissal of his damages claim against defendant Baumgart and his claim for reinstatement. We affirm the dismissal of the remaining claims.

II

The general framework for federal due process claims by public employees who lose their jobs is well established, though not uncontroversial. *See, e.g., Vail v. Board of Education*, 706 F.2d 1435 (7th Cir.1983), *affirmed by equally divided court, Board of Education v. Vail*, — U.S. —, 104 S.Ct. 2144, 80 L.Ed.2d 377 (1984). In order to sustain a claim for violation of federal due process rights, the discharged employee must first establish that he or she had a property interest in continued employment. To determine whether such a property interest exists, we must turn to state law. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 577–78, 92 S.Ct. 2701, 2709–10, 33 L.Ed.2d 548 (1972).

Under Wisconsin law, it is clear that Schultz, as a permanent employee, had an enforceable right to be dismissed only for cause. In *Busche v. Bosman*, 474 F.Supp. 484 (E.D.Wis.1979), *aff'd, Busche v. Burkee*, 649 F.2d 509 (7th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981), the district court held (and this court assumed) that a Wisconsin police officer had a property interest in his continued employment under Wis.Stat. § 62.13(5), and the same statute applies to Wisconsin fire fighters. Wisconsin court decisions involving police officers and fire fighters demonstrate that Wisconsin law gives those employees more than merely procedural protections. *Cf. Bishop v. Wood, supra*, 426 U.S. at 345, 96 S.Ct. at 2077 (procedural rights created no property

right where police officer could be fired for any reason). Section 62.13(5) establishes an elaborate mechanism for dismissal of these public employees, and the first step involves the filing of "charges" with the local board of police and fire commissioners. The board's decisions are subject to judicial review, and its decisions must include detailed factual findings about the "wrongful acts" which justify dismissal. *Edmonds v. Board of Fire & Police Commissioners*, 66 Wis.2d 337, 345, 224 N.W.2d 575 (1975). Further, there must be in the board's record adequate evidence of wrongful conduct to show that the board's decision was reasonable based on the evidence. *State ex rel. Smits v. City of De Pere*, 104 Wis.2d 26, 31, 310 N.W.2d 607 (1981); *Edmonds, supra*, 66 Wis.2d at 349, 224 N.W.2d 575. *See Oddsen v. Board of Fire & Police Commissioners*, 108 Wis.2d 143, 321 N.W.2d 161 (1982) (dismissals not supported by evidence after exclusion of coerced confessions).[3]

■ In light of the statute and these decisions, it should be obvious that Schultz had far more than a unilateral expectation of continued employment. He had a legitimate claim of entitlement, based on "mutually explicit understandings," to be dismissed only on charges that could be sustained by evidence. *See Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972); *Vail v. Board of Education, supra*, 706 F.2d at 1443–44 (Eschbach, J., concurring). He was certainly not subject to dismissal at the will and the pleasure of the city. *Cf. Bishop v. Wood, supra*, 426 U.S. at 347, 96 S.Ct. at 2079. Schultz therefore had a property interest in his job and could be dismissed

only in accordance with federal due process standards. *Cf. Amendola v. Schliewe*, 732 F.2d 79 (7th Cir.1984) (county assessor did not have tenured employment under Wisconsin law).

■ After establishing the existence of a property right, the discharged employee must demonstrate that he or she was discharged without the procedural protections accorded by the due process clause. The precise scope of those protections in the context of public employment is far from clear, but at a minimum, they include prior notice of the discharge and the reasons for it, and a meaningful opportunity to respond prior to termination. *See Arnett v. Kennedy*, 416 U.S. 134, 170, 94 S.Ct. 1633, 1652, 40 L.Ed.2d 15 (1974) (Powell, J., concurring) (notice and opportunity to respond before termination); *id.* at 195–96, 94 S.Ct. at 1664–65 (opinion of White, J.) (notice and opportunity for written presentation); *id.* at 226–27, 94 S.Ct. at 1680–81 (Marshall, J., dissenting) (notice and opportunity for evidentiary hearing before termination);[4] *Smith v. Board of Education*, 708 F.2d 258, 261 (7th Cir.1983) (prior notice and opportunity to respond); *Hostrop v. Board of Junior College District No. 515*, 471 F.2d 488, 495 (7th Cir.1972) (prior notice and meaningful opportunity to be heard), *cert. denied*, 411 U.S. 967, 93 S.Ct. 2150, 36 L.Ed.2d 688 (1973). *See also Loudermill v. Cleveland Board of Education*, 721 F.2d 550, 562 (6th Cir.1983) ("abbreviated opportunity to respond" before termination), *cert. granted*, —— U.S. ——, 104 S.Ct. 2384, 81 L.Ed.2d 343 (1984); *Detweiler v. Commonwealth of Virginia Department of Rehabilitative Services*, 705 F.2d 557, 560 (4th Cir.1983) (prior notice and opportu-

---

**3.** These decisions apply only to permanent employees such as Schultz. *See Kaiser v. Board of Police & Fire Commissioners*, 104 Wis.2d 498, 505, 311 N.W.2d 646 (1981) (probationary police officer had only unilateral expectation of continued employment).

**4.** The plurality opinion in *Arnett v. Kennedy* argued that where the same statute gives employees a protected interest in their jobs and defines the procedural protections to which they are entitled, the employees must "take the bitter with the sweet." 416 U.S. at 153–54, 94 S.Ct. at

1643–44 (plurality opinion of Rehnquist, J.). As the Sixth Circuit recently noted, the "bittersweet" theory in *Arnett* "has yet to be enshrined in our law." *Loudermill v. Cleveland Board of Education*, 721 F.2d 550, 560 (6th Cir.1983), *cert. granted*, —— U.S. ——, 104 S.Ct. 2384, 81 L.Ed.2d 343 (1984). In any event, that view would not be applicable here. Schultz is not arguing that the statutory procedures are inadequate; rather, he argues that defendants ignored those procedures and due process requirements.

nity to discuss charges); *Bueno v. City of Donna,* 714 F.2d 484, 493 (5th Cir.1983) (notice and effective opportunity to rebut charges); *Miller v. City of Mission,* 705 F.2d 368, 372 (10th Cir.1983) (notice and opportunity for pretermination hearing).

■ In this case, we must therefore consider whether Schultz was accorded these minimal procedural safeguards. In that connection, we should point out that it is not the task of this court to enforce in every procedural detail the elaborate requirements of section 62.13(5). Although the parties have discussed those procedures in detail, the issue here is not whether the city deviated from the statutory requirements. Schultz has brought his case in federal court alleging violation of the federal Constitution, and the only issue before us is whether the city satisfied those *constitutional* standards.[5]

■ We assume, as we must for purposes of this appeal, that Schultz was fired effective May 6, 1980. Our analysis of the constitutional issue centers upon the procedural safeguards accorded Schultz prior to that date. If Schultz received prior notice of termination and had a meaningful opportunity to respond prior to termination, either through the union grievance process or before the commission, then constitutional requirements would presumably have been satisfied. On the other hand, if Baumgart summarily fired Schultz, affording him neither prior notice nor an opportunity to respond, due process would have been violated.

It seems clear that, if Schultz received any prior notice at all, that notice was in Baumgart's letter of March 7, 1980. The defendants appear to view Baumgart's letter as notice of termination, and they con-

tend that plaintiff's due process rights were protected because he could then have sought a hearing through the grievance process or before the board.

Baumgart's letter said in full: "This letter is to inform you that effective Monday, March 10, 1980, you will be on vacation. On completion of your vacation, you will return to work, or your employment will be terminated." The first sentence notified Schultz of a unilateral action by Baumgart; he was removing Schultz from sick leave and placing him on vacation.[6] The second sentence appears to be simply a command which also warned Schultz of the consequences if he disobeyed it. To sustain the summary judgment, defendants must show that the letter was, as a matter of law, prior notice of termination that cast upon Schultz the obligation to respond prior to his termination.

We cannot say that, as a matter of law, Baumgart's letter was prior notice of termination. Therefore, we cannot fault Schultz for failing to take steps to protect himself before May 6, 1980. Nothing in the chief's March 7th letter appears to have suggested that the chief would fire Schultz summarily, without notice or an opportunity to respond. Schultz had no reason at that time to take any measures to protect himself, for the chief had not yet done anything. Schultz was entitled to assume that if the chief wanted to fire him, he would do so according to the law's requirements; the appropriate time to fight his termination would be when the chief filed charges and notified him. Put simply, until the chief fired Schultz without going through the legally prescribed procedures, he had not done anything wrong to Schultz.[7] Of course, we do not mean to

---

5. We need not decide here the precise relationship between the Wisconsin statutory procedures and the federal Constitution.

6. The chief's decision to remove Schultz from sick leave and to place him on vacation appears to implicate no federal rights at all. Schultz has introduced no evidence showing that he was promised indefinite sick leave, and the collective bargaining agreement relegates sick leave decisions to the chief's discretion. If Schultz

felt the chief's decision about his sick leave was wrong, the union grievance procedure was the proper remedy under these circumstances. Schultz apparently chose to do nothing regarding the sick leave issue.

7. We need not decide here whether the grievance procedures under the collective bargaining agreement would have adequately protected Schultz's due process rights. Because Schultz received no prior notice beyond the March 7th

suggest that Schultz could ignore with impunity the chief's order to return to work; we address here only the discharge *procedures.*

In some circumstances, a public employee who fails to take advantage of meaningful pre-termination opportunities to respond to charges may be deemed to have waived his or her procedural rights. *Fern v. Thorp Public School*, 532 F.2d 1120, 1132–34 (7th Cir.1976); *Field v. Boyle*, 503 F.2d 774, 778 (7th Cir.1974). In this case, however, we simply cannot conclude, as a matter of law, that Schultz needed to respond before the chief informed him *unconditionally* that he would be fired.[8]

For purposes of remand, we note that if Schultz was indeed fired in violation of his due process rights, the availability of *post-deprivation* grievance procedures or a board hearing would not have cured the violation. Schultz was entitled to notice and a meaningful opportunity to respond *before* he was terminated. If he was terminated without those protections, the constitutional deprivation was then complete. Schultz need not have exhausted other state remedies before bringing his section 1983 claim. *See Patsy v. Board of Regents*, 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982); *Vail v. Board of Education, supra*, 706 F.2d at 1440–41; *id.* at 1445–46 (Eschbach, J., concurring).[9]

letter, and because that letter did not, at least as a matter of law, require his response to protect his due process rights, we need not address the difficult issues posed by collective bargaining agreements which may restrict an individual employee's due process rights. *See, e.g., Parrett v. City of Connersville*, 737 F.2d 690 (7th Cir.1984) (discussing constitutional adequacy of grievance procedures in constructive discharge cases); *Lewis v. Hillsborough Transit Authority*, 726 F.2d 664 (11th Cir.1983) (agreement provided only post-termination grievance procedure), *rehearing denied with opinion*, 726 F.2d 668 (11th Cir.1984); *Winston v. United States Postal Service*, 585 F.2d 198, 208–10 (7th Cir.1978) (pre-termination arbitration with formal hearings available only at union's request); *Burnley v. Thompson*, 524 F.2d 1233, 1242 (5th Cir.1975) (dismissal of fire fighters under terms of union-negotiated agreement to settle strike).

8. On remand the defendants may be able to prove additional facts showing that Schultz should have understood that the March 7th letter was a notice of termination. In light of our disposition of the case, we need not decide whether, under Wisconsin law, a fire chief may completely ignore the statutory termination procedure and thereby cast upon the subordinate the burden of invoking the pre-termination process. Our concern here is only with the constitutional requirements.

9. In *Lewis v. Hillsborough Transit Auth.*, 726 F.2d 664 (11th Cir.1983), *rehearing denied with opinion*, 726 F.2d 668 (11th Cir.1984), the Eleventh Circuit held that the plaintiff's failure to invoke post-termination grievance procedures under a collective bargaining agreement justified rejection of his claim under section 1983. On rehearing, the court concluded that it had not thereby imposed an exhaustion requirement contrary to *Patsy* because the availability of the

grievance procedure satisfied due process. 726 F.2d at 669 (citing *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). The Eleventh Circuit appears to have held that the opportunity to file a post-termination grievance provided all the process that was due, perhaps because the collective bargaining agreement provided only for post-termination remedies. *Cf. supra* note 7. The court may also have believed that there was no practicable possibility for pre-termination proceedings because the employer reasonably believed that the plaintiff had resigned.

By contrast, the collective bargaining agreement in this case does not purport to waive the employee's statutory and constitutional claims to pre-termination process. The Eleventh Circuit's apparent reliance on the collective bargaining agreement in *Lewis* is therefore inapplicable here. And we do not view *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), as holding that the availability of a post-deprivation hearing cures this original violation where a meaningful pre-deprivation hearing was possible. *See Vail v. Board of Education, supra*, 706 F.2d at 1447–48 (Eschbach, J., concurring) (*Parratt* does not govern employment termination where pre-termination hearing is practicable). *But cf.* Judge Posner's dissenting opinion in *Vail*, 706 F.2d at 1454–56 (under *Parratt*, availability of post-termination contract action in state court should satisfy due process where state breaches employment contract). The Supreme Court has made it clear that post-deprivation remedies do not provide due process if pre-deprivation remedies are practicable. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982).

In *Altman v. Hurst*, 734 F.2d 1240 (7th Cir. 1984), we held that an employee did not have a protected property or liberty interest in his specific work assignments or the precise scheduling

In *Parratt v. City of Connersville*, 737 F.2d 690 (7th Cir.1984), this court held that, where a police officer had been constructively discharged, the available grievance procedure did not provide him with due process of law, at least as administered in that case. We said, however, that that procedure might have provided him with due process if the arbitrator had been empowered either to prevent the deprivation in the first place or to award full compensatory damages for the discharge. *Id.* at 697. In *Parrett* (not to be confused with *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)), it was necessary to evaluate the adequacy of post-discharge grievance machinery because, as a practical matter, a pre-deprivation hearing is not possible in a constructive discharge situation. "Realistically, the opportunity was for a hearing only after he was constructively discharged." 737 F.2d at 696. The situation was thus analgous to that in *Parratt v. Taylor*, where pre-deprivation due process was also impossible. The deprivation alleged here is, by contrast, a garden-variety summary dismissal, and the city could easily have complied with requirements for pre-deprivation procedures. In these circumstances, this court has consistently held that some form of pre-deprivation process is required, and *Parratt v. Taylor* is therefore inapplicable. *Vail, supra*, 706 F.2d at 1440–41; *id.* at 1446 (Eschbach, J., concurring). *See also Loudermill v. Cleveland Board of Education*, 721 F.2d 550, 562 (6th Cir.1983) (distinguishing *Parratt v. Taylor* on these grounds), *cert. granted,* — U.S. ——, 104 S.Ct. 2384, 81 L.Ed.2d 343 (1984).

We reverse the district court's grant of summary judgment in favor of Baumgart on the section 1983 claims against him, and we also reverse the summary judgment in favor of the other individual defendants on the section 1983 claims for reinstatement.

### III

Finally, the appellant also challenges the district court's dismissal of his section 1983 claims for damages against the city, the commission, the individual commission members, the city attorney and the city comptroller. We conclude that the court properly dismissed those claims.

■ The complaint did not allege, and the facts do not show, that Baumgart's actions were taken pursuant to any city policy or custom. *See Monell v. Department of Social Services*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Although plaintiff contends that he is not asserting claims based on respondeat superior, the absence of allegations and facts showing a policy or custom leaves him with no other case against the city and commission, and his claims against them were therefore properly dismissed.

The district court also properly dismissed the damages claims against the other individual defendants because those individuals were not personally responsible for any *constitutional* deprivation Schultz may have suffered. Individual liability for damages under section 1983 is predicated upon personal responsibility. *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983); *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir.1982).[10] The complaint here alleges

---

of his vacation time. That opinion suggested in dicta that post-deprivation state court remedies would have satisfied due process requirements. 734 F.2d at 1242, citing *Parratt v. Taylor, supra*. We assume that pre-deprivation procedures would have been impracticable in *Altman* because it would have been so difficult to foresee when incremental changes in working conditions would have amounted to a property or liberty deprivation. In any event, the dicta in *Altman* must be limited to situations in which a pre-deprivation hearing would be impracticable, for otherwise the language would conflict with *Logan v. Zimmerman Brush, supra*, 455 U.S. at

436, 102 S.Ct. at 1158, and *Vail, supra*. In addition, we note that *Logan* and *Vail* rejected the claim that the mere availability of a state court remedy would satisfy federal due process requirements where the remedy might be lengthy, speculative and incapable of entirely vindicating the plaintiff's rights. 455 U.S. at 436–37, 102 S.Ct. at 1158–59 (tort claim); 706 F.2d at 1440–41 (contract claim).

**10.** Although *Wolf-Lillie* also says that individual liability in a section 1983 action is "predicated upon fault," 699 F.2d at 869, the opinion clearly focuses upon personal responsibility in causing

that the city attorney, the city comptroller, and the individual board members failed to prevent Schultz's discharge without notice. As we have discussed above, whether Schultz was fired or instead resigned voluntarily is a disputed factual issue. Under either scenario, however, the individual defendants other than Baumgart could not have been personally responsible for a constitutional deprivation. If Schultz resigned voluntarily, of course, the due process clause does not require prior notice to him, and none of the defendants could be liable. Even if Schultz was fired without notice, Baumgart is the only individual who could have caused, and thus be held liable for, the deprivation. The appellant has directed us to no facts tending to show that his termination appeared to any defendant except Baumgart as anything other than a voluntary resignation. Prior to the claimed deprivation, therefore, the other individual defendants could not have been aware of any problem, and the claimed deprivation could not have occurred at their direction or with their express consent. *See Crowder v. Lash, supra,* 687 F.2d at 1006. These individuals became cognizant of the problem only after the claimed deprivation when Schultz sought reinstatement and brought this action. We express no views on their duties under state law after learning that Schultz claimed he was fired, but at that time the claimed constitutional deprivation would have been complete without implicating the personal responsibility of these individuals. With respect to these other defendants, therefore, the dispute as to whether Schultz resigned or was fired is not material. These defendants may not be held liable for any constitutional deprivation that may have occurred.

For the foregoing reasons, the judgment of the district court is affirmed in part and reversed in part. The case is remanded to the district court for further proceedings on plaintiff's claims for damages against

defendant Baumgart and for reinstatement.

---

the deprivation. The "fault" language in the opinion should not be read to imply a state-of-mind requirement for section 1983 liability, for the Supreme Court held in *Parratt v. Taylor,* *supra,* that section 1983 does not include a state-of-mind requirement. 451 U.S. at 534–35, 101 S.Ct. at 1912–13.