# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-1983

ROBIN J. BEAN,

*Plaintiff-Appellant,*

v.

WISCONSIN BELL, INC.,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 01 C 133—**J.P. Stadtmueller**, *Judge.*

———————

ARGUED JANUARY 14, 2004—DECIDED APRIL 26, 2004

———————

Before FLAUM, *Chief Judge*, and POSNER and DIANE P. WOOD, *Circuit Judges.*

POSNER, *Circuit Judge.* Robin Bean, who is black, was employed as a customer-service representative by the defendant phone company and sues under Title VII, complaining that she was suspended, and later terminated, because of her race. The district court granted summary judgment in favor of the company both on Bean's claim and on the company's counterclaim, which was for breach of contract under Wisconsin law. The company claimed that by resign-

ing, Bean had forfeited a $14,500 payment that the company had given her when she relocated from its Milwaukee to its Appleton office.

The facts, construed as favorably to Bean as the record will permit, are as follows. At Appleton, unsatisfactory performance resulted in her being placed on a "performance team" that was "coached" by her supervisor, Scott Smith. The two did not have a good relationship. He treated her coolly, sometimes scowling at her, and she responded hotly—when he pointed out that she had taken more than the permitted number of minutes away from her desk, she snapped at him that unless he wanted her to "poop" in her chair she would take whatever time she needed. Part of the coaching process involved making joint calls to customers. Bean refused to make joint calls with Smith unless a union representative listened in. There was no basis in the collective bargaining agreement for such a demand, and it was refused, but she continued to insist that she wouldn't make joint calls with Smith in the absence of a union representative. She was then suspended without pay for 10 days after a review of her employment record revealed numerous instances of inappropriate behavior on her part when she had been employed at the company's Milwaukee office.

Immediately upon her return to work after the suspension, a meeting was convened at which, with union representatives present, management explained to Bean that she would have to make joint calls with Smith without a union representative's listening in. When she realized this meant that Smith would continue to be her supervisor, she said she wouldn't continue with the meeting until she had consulted her "attorney." (It's unclear whether "attorney" referred to a lawyer or a union steward.) The senior manager present told Bean several times that if she left the room, the company would deem her to be resigning. She re-

sponded that she was not resigning, but she left the room anyway and the company declared that she had resigned, and she was so informed when she returned to the conference room.

There is a question, critical to the counterclaim, whether the termination of her employment should be treated as resignation or discharge. It might seem critical to the issue of racial discrimination as well, since, if she resigned, what is the adverse employment action of which she is complaining? Being forced, as a condition of retaining her job, to make joint calls with Smith without a union steward listening in? That would be far too trivial an imposition to trigger liability under Title VII. Still, there is the 10-day suspension for her initial refusal to make the joint calls, and, if racially motivated, a suspension is of course actionable. But there is no evidence that Bean's 10-day suspension *was* racially motivated. Her attempt to create a triable issue on the basis of the *McDonnell-Douglas* case by presenting evidence that the company treated worse-performing white customer-service representatives better than it treated her is a failure. What her evidence comes down to is that one of the white customer-service representatives who was having personal problems became hysterical while in the midst of a customer call and called Smith "a fucker" but calmed down and was not disciplined for her outburst, and another was reprimanded but not suspended when he made personal remarks to customers he was speaking with on the phone, and, in a separate incident, while a customer was on hold called the customer an "old hag."

The misconduct of the two whites was not so egregious that the fact that they weren't suspended permits an inference that Bean was suspended because she is black. Her own employment record contained many instances of inappropriate behavior that had not resulted in suspension. An

employer is likely to treat insubordination more harshly than most other forms of employee misconduct, regardless of race, because of the threat to workplace discipline. And, speaking of insubordination, it is as certain as these matters can be that Bean was fired (if that's how her termination should be characterized) not because of her race but because she was insubordinate.

The difficult issue in this case involves the counterclaim. When Bean was relocated to Appleton, the company, pursuant to the collective bargaining agreement, gave her $14,500 for moving expenses on condition that she return the money if she resigned ("voluntarily terminates employment," in the language of the agreement) within two years of the move. The company argues and the district judge held that since Bean resigned within two years she has to repay the $14,500. She argues that she was fired, and that the company cannot turn discharge into resignation by calling the former the latter.

The key concepts are those of constructive termination and constructive resignation. "Constructive" here performs its usual function in the law of indicating that something will for reasons of policy be treated as if it were something else. E.g., *In re Marchiando*, 13 F.3d 1111, 1115 (7th Cir. 1994). Thus, to have "constructive notice" of something means you don't have notice of it but the law will pretend you do. E.g., *Parker v. Sullivan*, 898 F.2d 578, 579 (7th Cir. 1990).

Constructive termination, or, better, because more precise, constructive discharge, refers to the situation in which an employer precipitates an employee's resignation by making the employee's working conditions unbearable. E.g., *Hunt v. City of Markham*, 219 F.3d 649, 655 (7th Cir. 2000); *Lee-Crespo v. Schering-Plough Del Caribe Inc.*, 354 F.3d 34, 45 (1st Cir. 2003); *Terry v. Ashcroft*, 336 F.3d 128, 151-52 (2d Cir. 2003). It is treated as discharge rather than resignation,

consistent with the general principle of contract law that you cannot prevent the other party from performing his duties under the contract and then turn around and accuse him of breach of contract; you precipitated the breach and are therefore responsible for it. *Rustles v. Christensen*, 241 N.W. 635, 636-37 (Wis. 1932); *Tuf Racing Products, Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 589 (7th Cir. 2000); *Herremans v. Carrera Designs, Inc.*, 157 F.3d 1118, 1124 (7th Cir. 1998); *Mendoza v. COMSAT Corp.*, 201 F.3d 626, 631 (5th Cir. 2000); 2 E. Allan Farnsworth, *Farnsworth on Contracts* § 8.6, pp. 454-55 (3d ed. 2004). The language of the collective bargaining agreement ("voluntarily terminates employment") gestures toward this principle, reinforcing the inference that no form of involuntary termination would be a valid basis for snatching back the relocation payment.

So if management had forced Bean literally at gunpoint to sign a letter of "voluntary" resignation, the letter could not have been used as the basis for demanding that she return the $14,500. However, forcing Bean to make joint calls with Smith without a union representative's being in attendance, and refusing to allow her to insist on a change of supervisors (Smith, even if cool, scowling, and generally unpleasant, was not harassing or abusing Bean to a degree that would have made the workplace intolerable to a reasonable person), were not the kind of affronts that would have compelled a reasonable employee in Bean's position to leave the company's employ before her entitlement to the relocation payment vested. Anyway she concedes that she was not constructively terminated.

The concept of constructive discharge is balanced by that of constructive resignation. Just as Wisconsin Bell could not be permitted to obtain a benefit from frustrating a condition (that it not fire Bean) of its right to demand repayment of relocation compensation, so Bean could not be permitted to

benefit from taking steps to frustrate a condition of her right to retain that compensation (that she not resign within two years) by making it impossible (more precisely, very costly) for Wisconsin Bell *not* to fire her. E.g., *Patterson v. Board of Regents*, 350 N.W.2d 612, 617-19 (Wis. 1984); *Nottelson v. Wisconsin Dept. of Industry, Labor & Human Relations*, 287 N.W.2d 763, 769-70 (Wis. 1980); *Lindsey v. Baxter Healthcare Corp.*, 962 F.2d 586, 588 (7th Cir. 1992); *Patterson v. Portch*, 853 F.2d 1399, 1405-07 (7th Cir. 1988); *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447-49 (6th Cir. 1999). If an employee dynamited the workplace so that there was no work for him to do, or if he murdered his boss and was carted off to jail, he might in either case refuse to resign, but as the cases that we have just cited make clear, the employer would be entitled to deem him to have resigned—that is, to treat him as if he had resigned. This case, however, is much less extreme; and the formula adopted by the Supreme Court of Wisconsin for deciding whether to classify a termination of the employment relation as constructive resignation when the employee doesn't say anything to indicate he's quitting—namely whether the employee engages in "conduct inconsistent with the continuation of the employee-employer relationship," *Nottelson v. Wisconsin Dept. of Industry, Labor & Human Relations, supra*, 287 N.W.2d at 769-70—is, as perhaps in the nature of the problem it must be, extremely vague, which makes it difficult to decide a nonobvious case on summary judgment.

Bean didn't want to resign, or say she was resigning— quite the contrary. She wanted to keep working for Wisconsin Bell, just under different conditions—either a different supervisor, or perhaps the same supervisor but monitored, as it were, by a union steward. She was not entitled to impose either condition, but that doesn't mean that she resigned. It means at the least that she was termi- nated for cause, specifically for insubordination. So if ter-

mination for cause forfeited relocation compensation, that would be the end of the case. But the collective bargaining agreement, which was the source of Bean's entitlement to a relocation payment, did not provide that the relocation payment would be forfeited upon termination for cause, maybe because "cause" for termination is so open-ended that such a condition would leave the employee insecure.

The question is then whether Bean's behavior was *so* extreme as to constitute constructive resignation, that is, a forcing by the employee of termination by engaging in conduct inconsistent with her continuing in the job. Maybe it did. By refusing to comply with the perfectly lawful and reasonable order that she make joint calls with Smith even if no union representative was present to monitor them, and even more by apparently insisting that she be reassigned to another supervisor, she may have left the employer with no choice but to terminate her. But it's not, or at least not quite, as if she had said I am not resigning but I choose not to do any work for you any more—here's the address to which to continue sending my salary checks. She would still have been working even if her demand for the presence of a union representative, or for a change of supervisors, had been met.

Cause can rise to the level of constructive resignation, however, as in *Klatt v. Labor & Industry Review Comm'n*, 669 N.W.2d 752, 759-62 (Wis. App. 2003), where the employee refused to comply with the employer's residency requirement. The requirement was very important to the employer because it was a police department that wanted its officers to live no more than 20 minutes from the police station so that they could get there quickly if need be. It's not as easy to see how it could make a big difference to Wisconsin Bell whether Bean worked under a different supervisor or made joint calls with a union steward in attendance. But who

knows? What may have been important to the company was not that the union representative not listen in to the joint calls, or even that Bean continue working under Smith, but that an employee not be permitted to set a bad example for the other employees by forcing concessions from the employer that the collective bargaining agreement did not require. There are many ways in which an employee's conduct can disrupt the employment relation. And there is the mundane point that union stewards are employees too, and the more time they spend "stewarding" the less time they spend working.

We do not wish to prejudge the issue. The line between insubordination and constructive resignation ("conduct inconsistent with the continuation of the employee-employer relationship") is obviously a fine one. Placing Bean on one side or the other requires a judgment that, depending as it does on a weighing of the facts of the particular case, is for the trier of fact to make, *Schultz v. Baumgart*, 738 F.2d 231, 239 (7th Cir. 1984), subject to light appellate review.

To summarize, the dismissal of the Title VII claim is affirmed, but the grant of summary judgment on the counterclaim is vacated and the case remanded for further consideration of it. The district judge will want to consider the option of relinquishing jurisdiction to the Wisconsin state courts, since the only basis for federal jurisdiction over the counterclaim is the supplemental jurisdiction of the federal courts and the federal claim has been dismissed without a trial. 28 U.S.C. § 1367(c)(3); *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727-28 (7th Cir. 1998).

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

A true Copy:
     Teste:

                                   _____
                                   *Clerk of the United States Court of*
                                   *Appeals for the Seventh Circuit*