Eton CHANEY and Amalgamated Transit Union, Local 1028, AFL–CIO, Plaintiffs–Appellants,

v.

SUBURBAN BUS DIVISION OF the REGIONAL TRANSPORTATION AUTHORITY, d/b/a Pace Northwest Division, and Brett Burkhardt, Regional Manager, Defendants–Appellees.

No. 94–1762.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 2, 1994.

Decided April 6, 1995.

J. Peter Dowd (argued), Robert E. Bloch, Linda Wyetzner, Dowd & Bloch, Chicago, IL, for plaintiffs-appellants.

Michael B. Roche (argued), Jeffrey E. Schiller, Michael F. Braun, Schuyler, Roche & Zwirner, Chicago, IL, for defendants-appellees.

Before FLAUM, GARZA,* and ROVNER, Circuit Judges.

FLAUM, Circuit Judge.

Plaintiffs Eton Chaney and the Amalgamated Transit Union, Local 1028, brought suit against Chaney's employer, the Suburban Bus Division of the Regional Transportation Authority, alleging violations of their Fourteenth Amendment due process rights. The plaintiffs alleged that the employer deprived Chaney and other union employees of due process by intentionally misinterpreting and misapplying grievance and arbitration procedures governing employee termination procedures in suspending and firing Chaney. The district court dismissed the suit for failure to state a claim for which relief could be grant-

* The Honorable Emilio M. Garza of the United States Court of Appeals for the Fifth Circuit is sitting by designation.

ed. We now affirm in part, vacate in part, and remand.

## I.

Eton Chaney worked as a part-time driver for the Suburban Division of the Regional Transportation Authority, which operates under the name "Pace." On January 29, 1993, Chaney was involved in an accident at the Jefferson Park Terminal of the Chicago Transit Authority when a bus he was driving hit and seriously injured a pedestrian. Pace immediately began investigating the incident and suspended Chaney without pay pending the results of drug and alcohol tests. Within a few days, test results showed that Chaney had not been under the influence of drugs or alcohol at the time of the test, but Pace nonetheless continued its investigation.

On February 2, 1993, Chaney and representatives from Amalgamated Transit Union, Local 1028, (the "Union") which represents Pace employees at Pace Northwest Division, met with Pace officials to discuss the incident. The officials did not provide Chaney with much information regarding their investigation but did notify him that they were continuing his suspension pending further inquiries into the accident. On February 10, 1993, Pace Regional Manager Brett Burkhardt met with Chaney and Union President John Folan and informed them that Pace had decided to fire Chaney. Burkhardt then gave Chaney a letter of termination stating that Chaney was being discharged because of the accident as well as his entire work history.

A collective bargaining agreement ("CBA") controls relations between Pace and the Union. The CBA permits employees "who consider themselves aggrieved by action of the Company" to file a grievance "within ten business days of the occurrence of the incident or notification to the employee, whichever is longer." All grievances must be initially brought to the attention of the Union representative, and Pace officials are obliged to discuss the grievance. If the grievance procedure does not resolve the problem, the dispute may then be arbitrated according to a process set forth in detail in the CBA.

After his dismissal, Chaney invoked his rights under the CBA's grievance procedure, and his grievance was ultimately arbitrated. On July 30, 1993, after a two-day hearing, an arbitration panel ruled that Chaney had not been dismissed for sufficient cause and ordered him reinstated and "made whole" for all wages and benefits lost due to the termination. Pace reinstated Chaney on August 9, 1993, but refused to award him lost wages or benefits. Pace, relying on its own interpretation of the arbitration, declined to pay Chaney wages or benefits from January 30, 1993, until the date of his reinstatement because Chaney had been a part-time worker without an hourly guarantee. Chaney insisted that his wages and back pay should be assessed based on his average work hours prior to January 30, but Pace would not provide the relevant information to make this calculation. Chaney and the Union also requested Pace to submit this dispute to the arbitration panel, but Pace refused.

Unable to persuade Pace to act, Chaney and the Union filed this suit in federal court. Chaney and the Union alleged that Pace violated 42 U.S.C. § 1983 by stripping post-termination arbitration procedures of any finality. They also alleged that Pace had a policy of providing little or no information to an aggrieved employee during the grievance procedure such that Pace deprived the procedure of necessary elements of due process. Chaney also requested the district court to enforce the arbitration award as per 710 ILCS § 5/11 under its pendant jurisdiction over that state law claim. The district court dismissed the § 1983 action under FED. R.CIV.P. 12(b)(6) for failure to state an injury to anyone's due process rights and, having eliminated the federal claims, dismissed the pendant claim as well. This appeal followed.

## II.

We review *de novo* a motion to dismiss for failure to state a claim under FED.R.CIV.P. 12(b)(6). *Hinnen v. Kelly,* 992 F.2d 140, 142 (7th Cir.1993). We accept as true the factual allegations of the complaint and draw all reasonable inferences in favor of the plaintiffs. *Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100

(1990); *Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir.1992). We permit dismissal under Rule 12(b)(6) only where "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

On appeal, Chaney and the Union assert two basic arguments. First, they contend that the grievance and arbitration procedures notwithstanding, Chaney and other Union members are entitled to a level of due process that Pace refused to provide. Specifically, Chaney and the Union argue that Pace failed to provide its employees with notice and an opportunity to be heard prior to termination, rendered the grievance process meaningless by withholding information about terminations until arbitration, and did not establish standards to guide its managerial employees in making termination decisions. Second, Chaney and the Union also insist that to the extent bargained-for, post-termination grievance and arbitration procedures can meet the requirements of due process, Pace's actions in refusing to comply with the award have deprived those procedures of any substance. Since the procedures as administered by Pace have not provided Chaney with relief, the plaintiffs maintain, the procedures have proven constitutionally inadequate in this case and threaten to do the same for other Union employees in the future.

■■■ To state a § 1983 claim, Chaney and the Union must allege that Chaney and other Union members were deprived of a property interest under color of state law without due process. For the purposes of this motion to dismiss, we assume, as did the district court, that Pace acted under color of state law and that the action was the product of a systematic policy and practice. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). We also assume that Chaney's contractual employment relationship with Pace gave Chaney a property interest in his further employment cognizable under the Fourteenth Amendment and that Chaney was deprived of that interest. Therefore, we focus solely on whether Pace improperly deprived Chaney and Union members of their interests in the matter.[1]

■■■ The Supreme Court's decision in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), provides the analytical framework for an analysis of whether due process requires that Chaney should have received (and other Union members should receive) additional procedural protections. In *Mathews,* the Court weighed three factors in determining whether a plaintiff received adequate process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335, 96 S.Ct. at 903. We apply the *Mathews* analysis to both the pre-deprivation and post-deprivation phases of Chaney's case.

---

1. We note that the Union's standing to sue in this case is somewhat unconventional but nonetheless valid. The Union has asserted that Pace's policies will cause its membership to face the same sort of problems in future grievance and arbitration procedures that Chaney now faces. Regardless of the claim's validity, we hold that the Union may assert membership standing here, *see Hunt v. Washington Apple Advertising Commn.*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977), and that the harm to Union members these alleged policies allegedly create is sufficiently concrete and imminent to invoke the jurisdiction of this court. *But cf.*

*People Organized for Welfare and Employment Rights v. Thompson*, 727 F.2d 167, 170 (7th Cir. 1984) (questioning associational standing in context of § 1983 suit by group to enforce the rights of its members). In reaching this determination,

> [w]e do not hold that the union does have standing; we hold only that the complaint sets forth a sufficient allegation of one of the elements of associational standing; injury to some of the union's members.... Our decision does not foreclose further scrutiny of the union's standing by the district court.

*International Union v. Johnson*, 674 F.2d 1195, 1200 (7th Cir.1982).

## A.

Due process is a "flexible" concept, *Mathews*, 424 U.S. at 334, 96 S.Ct. at 902, and in general, "[t]here is no rule that a 'pre-deprivation' hearing is required in every case." *Brown v. Brienen*, 722 F.2d 360, 365 (7th Cir.1983); *id.* at 367 (Flaum, J., concurring) ("Where there has been a deprivation of property, merely postponing the hearing does not deny due process if there is an adequate opportunity given for an ultimate determination of liability."). In the employment context, however, once an employee has established the existence of a property interest, the employee ordinarily has the right to notice and a reasonable opportunity to respond prior to termination. *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985); *Schultz v. Baumgart*, 738 F.2d 231, 235 (7th Cir.1984) (citing cases); *see also Cotnoir v. Univ. of Maine Sys.*, 35 F.3d 6, 12 (1st Cir.1994) ("Where an employee is fired in violation of his due process rights, the availability of post-termination grievance procedures will not ordinarily cure the violation."). The Supreme Court has also held that an adequate post-deprivation remedy does not necessarily preclude the requirement of a pre-deprivation hearing where such a hearing was feasible and practical. *Zinermon*, 494 U.S. at 127, 110 S.Ct. at 984; *id.* at 149, 110 S.Ct. at 995 (O'Connor, J., dissenting); *see also Cushing v. City of Chicago*, 3 F.3d 1156, 1164–65 (7th Cir.1993) (discussing *Zinermon* and noting that where a deprivation of a property right is predictable, pre-deprivation hearings are normally required); Sheldon H. Nahmod, CIVIL RIGHTS AND CIVIL LIBERTIES LITIGATION: THE LAW OF SECTION 1983, § 3.09 at 180 (McGraw–Hill, 3d ed. 1991) ("That is, this standard should not blind one to what is really at stake in these cases: whether there are constitutionally sound reasons to depart from the usual procedural due process requirement of a predeprivation hearing."). Although employment may not ordinarily be ended without notice and a hearing, "this procedure need not be elaborate and can be satisfied with less than a full evidentiary hearing." *Buttitta v. City of Chicago*, 9 F.3d 1198, 1202 (7th Cir.1993) (quoting *Smith v. Town of Eaton*, 910 F.2d 1469, 1472 (7th Cir.1990), *cert. denied*, 499 U.S. 962, 111 S.Ct. 1587, 113 L.Ed.2d 651 (1991)).

Applying *Mathews* and these subsequent cases to the facts at hand, we have little trouble concluding that due process did not mandate giving Chaney additional notice or a hearing before Pace suspended him. Chaney's interest in avoiding a suspension is significant. Nonetheless, Chaney was on notice as to why he was being suspended and Pace's interest in both managerial efficiency and in public safety clearly outweigh Chaney's interest in a pre-suspension hearing. The Constitution does not mandate additional protections at this stage.

The question of providing Chaney and other Union members additional process prior to termination is somewhat more difficult. The added burden of a pre-termination hearing would, as the district court noted, create some additional administrative costs and delays, but that does not overcome the ordinary presumption of pre-deprivation notice and hearing in employment termination situations. Pace nonetheless can prevail if it proves either that the Union agreed in the CBA to forego additional pre-termination procedures in favor of the CBA's grievance and arbitration procedure or that Pace provided Chaney actual notice.

We have held, and other circuits agree, "that grievance procedures created by collective bargaining agreements can satisfy the requirement of due process." *Cushing*, 3 F.3d at 1161; *see also Wallace v. Tilley*, 41 F.3d 296, 302 (7th Cir.1994); *Buttitta*, 9 F.3d at 1206; *Armstrong v. Meyers*, 964 F.2d 948 (9th Cir.1992) (*per curiam*); *Narumanchi v. Bd. of Trustees of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir.1988); *Lewis v. Hillsborough Transit Auth.*, 726 F.2d 664, 667 (11th Cir.1983) (*per curiam*), *cert. denied*, 469 U.S. 822, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984); *Jackson v. Temple Univ.*, 721 F.2d 931, 933 (3d Cir.1983); *Ash v. Bd. of Educ. of Woodhaven School Dist.*, 699 F.2d 822, 827 (6th Cir.1983); *Winston v. United States Postal Service*, 585 F.2d 198, 209–10 (7th Cir.1978); *cf. Parrett v. City of Connersville, Ind.*, 737 F.2d 690, 696 (7th Cir.1984) ("[T]he

concept of due process is sufficiently flexible to allow the courts to work out an accommodation between the interest in an orderly system of labor relations in the public sector as elsewhere and public employees' interest in procedural protections of job rights classified as property rights."), cert. dismissed, 469 U.S. 1145, 105 S.Ct. 828, 83 L.Ed.2d 820 (1985). Chaney and the Union admit as much but maintain that the grievance and arbitration procedures are consistent with additional pre-termination notice and a hearing and are unconstitutional as applied.

The cases cited do not resolve the matter. We determined in Wallace and Winston that the notice and hearing the respective plaintiffs received prior to their termination (and in addition to their post-termination grievance and arbitration rights) satisfied due process. Wallace, 41 F.3d at 300–01; Winston, 585 F.2d at 209–10. The Armstrong court concluded that the collective bargaining agreement in that case satisfied due process but also determined that Armstrong was given notice and an opportunity to respond before his termination pursuant to the agreement. Armstrong, 964 F.2d at 949. In Narumanchi, Narumanchi had recourse to pre-termination grievance procedures under the agreement but failed to pursue them. Narumanchi, 850 F.2d at 71–72. In Lewis, Lewis's pre-termination notice rights were not at directly at issue, Lewis, 726 F.2d at 666–67, and Ash and Jackson are equally unhelpful on this point. Similarly, in Parrett, Parrett alleged constructive discharge, and under that circumstance pre-termination notice is obviously not a viable option. Parrett, 737 F.2d at 694. Buttitta is a closer case but is still not analogous; Buttitta, unlike the present case (and like Mathews ), concerned reinstatement following disability leave after an analysis of Buttitta's medical records. In a case such as Buttitta, "the answer depends upon medical reports, and the risk of erroneous deprivation is too slight to require a pre-deprivation hearing." Buttitta, 9 F.3d at 1206. The question thus remains whether the CBA in this case satisfies due process by either waiving the employee's constitutional claim to pre-termination process or providing sufficient post-termination relief. See Schultz, 738 F.2d at 237 n. 9.

■ Having located no case dispositive of the matter, we are reluctant to diverge from the general rule requiring pre-deprivation notice and an opportunity to be heard where the deprivation will be predictable. Loudermill, 470 U.S. at 542, 105 S.Ct. at 1493; Cushing, 3 F.3d at 1164–65; Nahmod, supra, § 3.09 at 180. In Loudermill, the Supreme Court held that Ohio state employees were entitled to some pre-termination hearing despite the fact that Ohio law appeared to offer them a full panoply of post-termination remedies. Loudermill, 470 U.S. at 535–36, 542–46, 105 S.Ct. at 1489–90, 1493–95. Loudermill's conclusion leads to our holding in this case: due process requires pre-termination notice and an opportunity to respond even where a CBA provides for post-termination procedures that fully compensate wrongfully terminated employees. Under Mathews, Pace's providing notice and an opportunity to respond to charges prior to a discharge "would impose neither a significant administrative burden nor intolerable delays." Loudermill, 470 U.S. at 544, 105 S.Ct. at 1494. Indeed, Pace contends that it gave Chaney both. These potential burdens also do not outweigh the employee's substantial interest in continued employment.[2] Additionally, pre-termination notice and an opportunity to respond would help avoid erroneous dismissals, thereby saving an employee the difficulties of unemployment and both sides the burden of subsequent arbitration. In light of the CBA's post-termination grievance and arbitration procedures, the added benefits in this case of pre-termination notice and an opportunity to be heard are not huge, but they are in no way insignificant.

Furthermore, as Chaney and the Union point out, the CBA is not inconsistent with other unmentioned, pre-termination procedures. We hesitate to determine that the Union, acting on behalf of its members,

2. In the instant case, Pace had already suspended Chaney without pay. Arguably, the pre-termination employment interest of someone like Chaney is not as weighty as that of an individual, like those in Loudermill, who were actively working and earning wages at the time of their discharges.

meant to surrender these rights in the CBA without a statement in the CBA to that effect. A union might bargain away its members' pre-deprivation rights for something else or waive them for some reason, and an employee might decide to forego those rights in a particular case, *cf. Cliff v. Bd. of School Com'rs of City of Indianapolis*, 42 F.3d 403, 413 (7th Cir.1994) (plaintiff waived right to a pre-termination hearing to which she was entitled), but we shall not assume a waiver unless it is more explicit.

The question then arises as to whether Pace provided Chaney with actual notice and an opportunity to be heard before his termination. Pace argues that Chaney knew why he was suspended and had the opportunity to meet with Pace officials before his final termination, whatever the content of that meeting was. However, this case is before us on a Rule 12(b)(6) motion, and we must take the facts as the plaintiffs aver them. Chaney and the Union allege in their complaint that Chaney received no notice that he was going to be fired, that he had no pre-deprivation hearing on the matter, and that this is Pace's policy and practice. The suspension as well as the February 2 meeting seem to indicate notice, and the meeting's occurrence hints that Chaney received an opportunity to explain himself, but Chaney and the Union assert otherwise. In *Schultz* we held that we could not determine as a matter of law that a letter informing an employee on vacation for medical reasons that "[o]n completion of your vacation, you will return to work or your employment will be terminated" constituted notice. *Schultz*, 738 F.2d at 236. If the letter in *Schultz* presented a factual question not capable of resolution on a 12(b)(6) motion, then so does Pace's handling of Chaney's termination.

■ Our determination that this matter survives Pace's motion to dismiss does not imply that it will survive summary judgment. Due process requires only "abbreviated pre-termination processes where full post-deprivation processes are available." *Panozzo v. Rhoads*, 905 F.2d 135, 138 (7th Cir.1990); *Buttitta*, 9 F.3d at 1202; *see also Buckner v. City of Highland Park*, 901 F.2d 491, 496 (6th Cir.1990) ("Affording an employee the opportunity to respond after being confronted with the charges is all that pretermination due process requires of the employer."), *cert. denied*, 498 U.S. 848, 111 S.Ct. 137, 112 L.Ed.2d 104 (1990). If, as Pace contends, Chaney was on notice of an impending termination and had a chance to explain himself before the date of his firing, that would satisfy the requirements of due process in this case. Even if Chaney received no pre-termination notice or a hearing, the plaintiffs will also have to show that the denial of pre-termination due process was the result of Pace's policy and practice and not simply a one-time deficiency. The posture of this case forbids us from making these assessments at this time; we accordingly remand the case to the district court for a consideration of these issues.

B.

■ The plaintiffs' remaining arguments regarding post-deprivation procedures lack merit, and the district court properly dismissed them. While *Parrett, Buttitta*, and the other cases left open the possibility of supplementing a grievance and arbitration process with additional pre-termination procedures, they foreclosed that opportunity with regard to post-termination procedures. The language of those cases is clear: grievance and arbitration procedures can (and typically do) satisfy the requirements of post-deprivation due process. *See, e.g., Buttitta*, 9 F.3d at 1206; *Parrett*, 737 F.2d at 696. The adoption of additional standards to guide Pace management, when weighed in the *Mathews* balance, would be an unnecessary addition to the process the CBA already provides. The CBA allows termination only for "sufficient cause," and that standard is sufficiently well defined in the law so as not to suffer from any constitutional infirmities. Pace's failure to establish termination guidelines for its employees, even if true, is similarly irrelevant. Due process also does not require providing an employee with all relevant information in an employer's possession during the grievance process where the employee can later receive and use that information during the arbitration procedure. Pace's decision to withhold information dur-

ing the grievance process simply does not rise to the level of a due process violation because Pace must (and does) provide that information during the arbitration.

 To the extent Chaney and the Union maintain that Pace's failure to comply with the arbitration award has injured (and will in the future injure) Chaney and other Union members' due process rights, their argument is equally unmeritorious. Both contractually and as applied, the CBA provides Pace employees with a full hearing after a termination and a complete remedy; in the instant case, Chaney won his arbitration. Pace's recalcitrance in the face of that victory does not strip the CBA of its constitutional sufficiency because Chaney has an adequate method of enforcing the arbitration award through the initiation of state court proceedings. *See* 710 ILCS §§ 5/11 & 14 (governing enforcement of arbitration awards). Chaney and the Union analogize their case to the situation in *Parrett,* where we held an arbitration procedure constitutionally deficient because the arbitrator could not restore the employee's lost wages. *Parrett,* 737 F.2d at 697. The problem in the present case lies not in the arbitration procedure but in Pace's reaction to the arbitral award. A refusal to pay an arbitration award does not in and of itself establish a due process violation, *see Evans v. City of Chicago,* 10 F.3d 474 (7th Cir.1993) (*en banc* ), *cert. denied,* —— U.S. ——, 114 S.Ct. 1831, 128 L.Ed.2d 460 (1994), and whatever objections Chaney and the Union have to Pace's tactics, Illinois law can address them.

Thus, we hold that the CBA satisfies the requirements of post-termination due process. On remand, the district court should address only Chaney and the Union's arguments regarding pre-termination notice and opportunity to be heard and not the adequacy of post-termination remedies.

### C.

 Finally, the district court, in dismissing Chaney and the Union's § 1983 claim, also dismissed the pendant state claim to enforce the arbitration award. In light of our remanding the § 1983 claim, we must also vacate and remand the district court's decision on the supplemental claim. Our decision does not, however, prevent the district court from dismissing the state claim at a later time should the § 1983 claim be resolved on summary judgment or otherwise be dismissed, or should the court find other reasons why it should not, pursuant to 28 U.S.C. § 1367(c), exercise its supplemental jurisdiction.

For the foregoing reasons, we affirm the decision of the district court in part, vacate in part, and remand for further proceedings.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.