**Betty SMITH, Plaintiff,**

**v.**

**MILWAUKEE COUNTY,** Milwaukee County Sheriff Lev Baldwin, Richard Artison, Jeffrey Zens, Peter Misko, Peter Lango and Jerianne Feiten, Defendants.

No. 95–C–149.

United States District Court, E.D. Wisconsin.

Feb. 14, 1997.

Betty Adelman and Jeffrey Hynes, Adelman, Adelman & Murray, Milwaukee, WI, for Plaintiff.

Timothy R. Schoewe, Milwaukee County Corporation Counsel, Milwaukee, WI, for Defendants.

## DECISION AND ORDER

CURRAN, District Judge.

Betty Smith, a Milwaukee County (Wisconsin) deputy sheriff, is suing the County, its Sheriff, its former Sheriff, Richard Artison, and four other deputies[1] for violating her civil rights by firing her without a pre-termination hearing. Smith, who has been reinstated, seeks $112,319.80 in compensatory damages and $25,000 in punitive damages pursuant to 42 U.S.C. § 1983.

After being employed by the County in other capacities, Smith joined the Sheriff's Department in March of 1992, as a probationary employee. During her probationary period, Smith was assigned to a facility where she was being trained to work in a Milwaukee County jail, which was then under construction.

In October of 1992, a woman was arrested for prostitution and brought to the jail. While being held in pretrial detention, the woman committed suicide. Smith was not working at the jail during the incident. Nevertheless, a few days later, Smith, who was then working at the jail annex, was asked by her superior, Defendant Jerianne Feiten, to write a report about any discussions of the suicide she may have had with other employees. Smith refused to complete or rewrite the report. An internal investigation by the Sheriff's Department determined that Smith was insubordinate in refusing to complete the report.

In March of 1993, as Smith approached the end of her probationary period, the County's Recruit Review Committee met and recom-

1. The Defendant deputies are: Jeffrey Zens, Peter Misko, Peter Lango and Jerianne Feiten. The deputies, as well as Defendant Richard Artison, are being sued in their official as well as personal capacities. Prior to trial, the court suggested that the new sheriff should be substituted for Richard Artison in his official capacity because Artison had retired. The Plaintiff never formally made the substitution, so the court hereby substitutes Milwaukee County Sheriff Lev Baldwin in his official capacity, for Richard Artison in his official capacity. See Federal Rule of Civil Procedure 25(d).

mended to the Sheriff that Smith should not be retained for permanent employment. On March 24, the Sheriff signed an order terminating Smith without cause effective March 25.

After a deputy sheriff works 2080 hours of "straight time," the deputy has completed her probationary period. Prior to March 24, 1993, Betty Smith had completed 2072 hours of straight time. On March 24, she was not scheduled to work, but, at the request of a superior, came to work where Smith herself filled out a time sheet classifying the eight hours worked on March 24 as overtime, even though she had not yet completed a regular forty hour work week—a prerequisite for accruing overtime under the deputy sheriffs' labor agreement.

After Smith was fired, she demanded a hearing before the County's Personnel Review Board which ultimately decided that the last eight hours Smith worked should be classified as straight time making her a permanent employee. Smith was reinstated and eventually given back pay and benefits.

In 1994, Smith filed this lawsuit in the Circuit Court of Milwaukee County. The Defendants removed it to federal court where a bench trial was held.

## I. TRIAL RULINGS

Smith's complaint sets forth causes of action for denial of procedural due process, denial of substantive due process, and conspiracy. After a continuation of the scheduled trial date occasioned by the late disclosure of the Plaintiff's expert witness, all issues were tried to the court.

At the close of the Plaintiff's evidence, the Defendants moved for judgment as a matter of law. See Federal Rule of Civil Procedure 50. After hearing arguments, the court dismissed the conspiracy claim because the Plaintiff had not met her burden of proving that the Defendants acted in concert or had a meeting of their minds aimed at depriving Smith of her civil rights. See Ratliff v. City of Milwaukee, 795 F.2d 612, 628 (7th Cir. 1986); Richardson v. City of Indianapolis, 658 F.2d 494, 500 (7th Cir.1981), cert. denied, 455 U.S. 945, 102 S.Ct. 1442, 71 L.Ed.2d 657 (1982).

The contours of the Plaintiff's substantive due process claim were never clearly delineated.[2] After eliciting testimony from a parade of witnesses concerning the jail suicide and Defendant Feiten's insistence that Smith write a report disclosing with whom she had discussed the incident, the Plaintiff argued that the Defendants had deprived her of substantive due process by violating her rights under the Free Speech Clause of the First Amendment. She claimed that they had imposed discipline upon her for exercising her right to speak freely and to remain silent. Smith tried to establish that the Defendants had forced her to change her report and even hinted that they had coerced her to write a false report about the aftermath of the jail suicide; but the evidence only supports a finding that she was asked to complete a question she had evaded. Smith also

**2.** In a posttrial brief, Smith mentions that she was deprived of a name-clearing hearing. However, she neither pleaded, nor tried, nor proved such a claim. In order for Smith to have proved that the Defendants had deprived her of a liberty interest in her employment by terminating her under stigmatizing circumstances without giving her an opportunity to clear her name, she would have had to establish that: (1) she was a public employee; (2) she was subject to an adverse employment action; (3) the charges were made public; (4) the charges were false; and (5) she requested a name-clearing hearing and was denied. See Codd v. Velger, 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977); Gillum v. City of Kerrville, 3 F.3d 117, 121 (5th Cir.1993), cert. denied, 510 U.S. 1072, 114 S.Ct. 881, 127 L.Ed.2d 76 (1994); McMath v. City of Gary, Indiana, 976 F.2d 1026, 1031–36 (7th Cir.1992);

Ratliff v. City of Milwaukee, 795 F.2d 612, 625–27 (7th Cir.1986). The stigma must have been so severe that the employee was effectively foreclosed from other employment opportunities. See Ratliff, 795 F.2d at 625.

Smith's trial evidence and testimony did not show that she was terminated for cause or that the investigation of her conduct in connection with the aftermath of the jail suicide was made public beyond the appropriate chain of command within the Sheriff's Department. Franklyn Gimbel, Smith's attorney in the administrative proceedings, testified that she had not requested a name-clearing hearing and she presented no evidence that she was foreclosed from other employment opportunities. Consequently, Smith could not have prevailed on a claim for loss of reputation even if it had been litigated.

failed to establish that she was disciplined for her speech or silence.

A public employee has a right (subject to limitations) to speak about matters of public concern. *See generally Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Under some circumstances, an employee also has a protected interest in not being compelled to speak. *See, e.g., Wooley v. Maynard,* 430 U.S. 705, 717, 97 S.Ct. 1428, 1436, 51 L.Ed.2d 752 (1977); *H.M. Troster v. Pennsylvania State Department of Corrections,* 65 F.3d 1086, 1093–97 (3d Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 708, 133 L.Ed.2d 663 (1996); *Langford v. Lane,* 921 F.2d 677, 680–81 (6th Cir.1991); *Nicholson v. Gant,* 816 F.2d 591, 599–600 (11th Cir.1987); *Sykes v. McDowell,* 786 F.2d 1098, 1104–05 (11th Cir.1986). Even assuming, without finding, that the content of Smith's statements and silence fit within the parameters of the type of expressive conduct protected by the First Amendment, the Defendants met their burden of proving that Smith's interests were outweighed by the Sheriff's interest in maintaining discipline among his deputies and avoiding disruption in the office. *See Jefferson v. Ambroz,* 90 F.3d 1291, 1296–99 (7th Cir.1996). Smith's exercise of what she believed to be her First Amendment rights impeded her ability to perform her employment mandated duty to complete the report. Under these circumstances, Smith's constitutional rights to speak freely and to remain silent were not abridged. *See Caruso v. De Luca,* 81 F.3d 666, 670–71 (7th Cir. 1996); *Domiano v. Village of River Grove,* 904 F.2d 1142, 1145 (7th Cir.1990) ("The First Amendment is not a license for insubordinate speech that impedes an employee's performance of his duties or that interferes with the proper functioning of the workplace"). For these reasons, Smith's substantive due process-First Amendment claim was dismissed at trial. *See* Federal Rule of Civil Procedure 50.

After the conclusion of testimony, the parties elected to submit written summations. The Plaintiff's summation was filed late and was followed by a series of unauthorized replies and surreplies. With the record now closed, the court must address a number of threshold issues before it can resolve the merits of the remaining procedural due process claim.

## II. DEPUTIES' PERSONAL INVOLVEMENT

An individual must have been personally involved in the deprivation of a plaintiff's constitutional rights in order to be held liable for damages under 42 U.S.C. § 1983. *See Vance v. Peters,* 97 F.3d 987, 991 (7th Cir. 1996). With the conspiracy and substantive due process claims dismissed, the court can find no evidence establishing that any of the deputies were personally involved in the deprivation of Betty Smith's procedural due process rights. Of the individuals named as Defendants, only Richard Artison personally terminated Smith's employment as a deputy without notice and an opportunity to be heard.

Although Smith charges that Defendant Misko altered her time sheet, the testimony at trial revealed that, after the termination, the County audited Smith's hours and the payroll clerk, Rosalyn Schmitt, noted on Smith's time sheet that Smith's last eight hours of work should be treated as straight time because she had not completed a forty hour week. Smith herself had listed the March 24 hours on her timesheet as overtime. Misko ordered Schmitt to restore the records to their original condition. There is no evidence that Misko ordered Smith's own recordings to be altered. Moreover, Misco's actions occurred after the termination and were not a cause of it. Consequently, because the evidence presented at trial showed that neither Misko nor any of the other three deputies were personally involved in the procedural due process violation, all claims against them in their official and individual capacities are dismissed. *See Schultz v. Baumgart,* 738 F.2d 231, 238–39 (7th Cir. 1984).

## III. COUNTY LIABILITY

A local government entity such as Milwaukee County can only be held liable for money damages if the plaintiff has been injured by an unconstitutional policy or custom

or by a decision of a policymaker. *See Monell v. New York Department of Social Services*, 436 U.S. 658, 690–92, 98 S.Ct. 2018, 2035–37, 56 L.Ed.2d 611 (1978); *Baxter, by Baxter v. Vigo County School Corporation*, 26 F.3d 728, 734–35 (7th Cir.1994). In this case, Smith did not establish that she was injured by any policy or custom of Milwaukee County. Although the evidence shows that Smith was terminated by then-Sheriff Artison, the County cannot be held liable for his decision, even if it violated Smith's due process rights. Under Wisconsin law, a sheriff is not a policymaker for a county; rather, the Sheriff is a state official. *See Soderbeck v. Burnett County, Wisconsin*, 821 F.2d 446, 449–52 (7th Cir.1987) (county not liable for sheriff's firing of secretary). Therefore, Milwaukee County cannot be held liable under a policymaker theory,[3] nor can liability be imposed under a theory of *respondeat superior*. *See McTigue v. City of Chicago* 60 F.3d 381, 382 (7th Cir.1995). Consequently, the claims against Milwaukee County are dismissed.

## IV. *OFFICIAL CAPACITY*

■ The Milwaukee County Sheriff is being sued in his official capacity. However, as explained above, the Sheriff is considered a state official under Wisconsin law. Suits for money damages brought against state officials are barred by the Eleventh Amendment, as interpreted by the courts. As the Seventh Circuit has explained:

The Eleventh Amendment to our Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although this language expressly encompasses only suits brought against a state by citizens of another state, the Eleventh Amendment has long been interpreted to also bar federal courts from exercising jurisdiction over actions against a state brought by her own citizens. *Papasan v. Allain*, 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)). Eleventh Amendment issues arise whenever a private citizen files a federal lawsuit against a state, a state agency, or a state official—although the effect of the amendment differs depending on the category of defendant. *Kroll v. Board of Trustees of the University of Illinois*, 934 F.2d 904, 907 (7th Cir.), *cert. denied*, 502 U.S. 941, 112 S.Ct. 377, 116 L.Ed.2d 329 (1991).

*Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir.1992), *cert. denied*, 508 U.S. 942, 113 S.Ct. 2421, 124 L.Ed.2d 643 (1993). Under this doctrine of sovereign immunity, the Milwaukee County Sheriff cannot be held liable for money damages in his official capacity.[4] Therefore, these claims will be dismissed.

## V. *QUALIFIED IMMUNITY*

■ The Eleventh Amendment does not bar claims against Richard Artison in his personal capacity. *See Kentucky v. Graham*, 473 U.S. 159, 165–67, 105 S.Ct. 3099, 3104–06, 87 L.Ed.2d 114 (1985); *Kroll v. Board of Trustees of the University of Illinois*, 934 F.2d 904, 907 (7th Cir.), *cert. denied*, 502 U.S. 941, 112 S.Ct. 377, 116 L.Ed.2d 329 (1991).

---

**3.** The Seventh Circuit has not revisited this issue and it is not clear whether Milwaukee County could be held liable for its Sheriff's official acts without regard for whether the Sheriff is a policymaker. While the resolution of this issue would have no effect on the court's ultimate award in this case, the court notes that courts in other jurisdictions have not held counties liable for acts of sheriffs in states where sheriffs are state actors. *See, e.g. Blankenship v. Warren County, Virginia*, 931 F.Supp. 447, 449 (W.D.Va. 1996). *See also, e.g., Scott v. O'Grady* 975 F.2d 366, 370–73 (7th Cir.1992), *cert. denied*, 508 U.S. 942, 113 S.Ct. 2421, 124 L.Ed.2d 643 (1993) (Sheriff acting as arm of the state when executing state court writs or orders).

**4.** Under *Gorka v. Sullivan*, 82 F.3d 772 (7th Cir.1996), which was decided after the trial of this case, this action could have been remanded to state court because it contains a claim against the Milwaukee County Sheriff in his official capacity which is barred by the Eleventh Amendment. When even one claim in an action is barred by sovereign immunity, a case cannot be removed. *See Gorka*, 82 F.3d at 775 (quoting *Frances J. v. Wright*, 19 F.3d 337, 341 (7th Cir.), *cert. denied*, 513 U.S. 876, 115 S.Ct. 204, 130 L.Ed.2d 134 (1994)). In this case the Plaintiff did not object to removal and the parties did not raise the Eleventh Amendment issue.

However, a state official sued in his personal capacity, may be able to assert personal immunity defenses. *See Kentucky v. Graham,* 473 U.S. 159, 165–67, 105 S.Ct. 3099, 3104–06, 87 L.Ed.2d 114 (1985). In their Answer [5] and after trial, the Defendants have asserted and argued that former Sheriff Artison, as well as the other individuals, are entitled to qualified immunity, a doctrine the Seventh Circuit explained, as follows, in a recent employment case:

The Supreme Court has long held that public officials are entitled to some form of immunity from suits for damages. *See Spalding v. Vilas,* 161 U.S. 483, 498, 16 S.Ct. 631, 637, 40 L.Ed. 780 (1896); *Scheuer v. Rhodes,* 416 U.S. 232, 247, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90 (1974); *Harlow v. Fitzgerald,* 457 U.S. 800, 806–07, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). This necessarily means that, within the area of immunity, the officials do not have to undergo the burden of litigation; they do not need to prove that they were "right" in order to enjoy the defense. To the contrary, qualified immunity shields government officials who are performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738; *Supreme Video, Inc. v. Schauz,* 15 F.3d 1435, 1438–1439 (7th Cir.1994). The inquiry focuses on the objective legal reasonableness of the action, not the state of mind or good faith of the officials in question. *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987). It is an objective test, as the Supreme Court recently reiterated, "precisely in order to permit the defeat of insubstantial claims without resort to trial." *Behrens [v. Pelletier,* —— U.S. ——, at ——] 116 S.Ct. [834] at 838 [133 L.Ed.2d 773 (1996) ] (internal quotations omitted).

Once a public official raises the defense of qualified immunity, the plaintiff bears the burden of proof on the issue. *Clash v. Beatty,* 77 F.3d 1045, 1047 (7th Cir.1996); *Gregorich v. Lund,* 54 F.3d 410, 413 (7th Cir.1995); *Rakovich v. Wade,* 850 F.2d 1180, 1209 (7th Cir.) (en banc), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). When considering a defense of qualified immunity, two questions are pertinent: first, whether the plaintiff has asserted a violation of a constitutional right at all, and second, whether the plaintiff has demonstrated that the applicable constitutional standards were clearly established at the time in question. *See Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); *Eversole v. Steele,* 59 F.3d 710, 717 (7th Cir.1995); *Zorzi v. County of Putnam,* 30 F.3d 885, 892 (7th Cir.1994). The key point for the second question is whether a reasonable person would have been on notice that her actions violated clearly established law. A plaintiff can establish this either by showing that a closely analogous case has already established both the right at issue and its application to the factual situation at hand, *see McGrath v. Gillis,* 44 F.3d 567, 570 (7th Cir.1995), or by showing that the violation was so obvious that a reasonable person would necessarily have known about it. *See Clash,* 77 F.3d at 1048; *Rakovich,* 850 F.2d at 1214.

*Erwin v. Daley,* 92 F.3d 521, 525 (7th Cir. 1996), *petition for cert. filed,* 85 U.S.L.W. 3467 (U.S. December 6, 1996) (No. 96–970).

The Defendants maintain that a reasonable person in the position of the Sheriff would not have known that his conduct deprived the Plaintiff of due process. In their posttrial brief, the Defendants argue that: "In the instant case, the sheriff knew what was reasonably and accurately reported to him by others whose information he could rely upon: his staff and the staff of the department of Payroll, Labor Relations and Human Resources. They all reported Smith was still a probationer at the time the sheriff decided to separate her." Defendant's [sic] Brief at 9. The problem with this argument is that there was insufficient evidence presented at trial to

---

5. In their Answer, the Defendants use the incorrect term "good faith immunity." *See Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987).

prove it. The Defendants did not call former Sheriff Artison to testify in support of their affirmative defense of qualified immunity and did not otherwise meet their burden of proof.

The Plaintiff, on the other hand, proved at trial that a reasonable person in the position of the Sheriff should have known that Smith had completed her probationary period. Yet, Smith was terminated from her employment without prior notice or an opportunity to be heard. This constitutes a denial of her constitutional right to procedural due process.

A permanent public employee's right to a pre-termination hearing had been well-established in March of 1993 when Smith's termination occurred. *See, e.g., Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985); *McCammon v. Indiana Department of Financial Institutions,* 973 F.2d 1348, 1350 (7th Cir.1992), *cert. denied, sub nom. Indiana Department of Financial Institutions v. Miller,* 507 U.S. 920, 113 S.Ct. 1282, 122 L.Ed.2d 675 (1993). Failing to provide notice and a hearing prior to firing a permanent employee is so obviously a constitutional wrong that a reasonable person would necessarily have known about it. *See Erwin v. Daley,* 92 F.3d 521, 525 (7th Cir.1996); *petition for cert filed,* 85 U.S.L.W. 3467 (U.S. December 6, 1996) (No. 96–970). Given these circumstances, the court concludes that Defendant Artison is not entitled to qualified immunity from liability for money damages.

## VI. *FINDINGS OF FACT*

The sole liability issue remaining is whether Smith was deprived of her right to due process when she was terminated without notice and an opportunity to be heard. After considering all the evidence adduced at trial on this issue, the court sets forth its findings of fact—found by a preponderance of the evidence—separately from its conclusions of law which are set forth in Part VII, below. *See* Federal Rule of Civil Procedure 52.

1. On March 27, 1992, Plaintiff Betty Smith became a probationary employee of the Milwaukee County Sheriff's Department and signed a statement which provided, in part, that:

> I, Betty A. Smith, am aware of the fact that I am being offered a position of Deputy Sheriff on a probationary basis, and that the length of the probationary period is 2,080 hours of straight time hours paid. If I perform up to the expectations of the Sheriff's Department Administration, I will attain permanent status in the rank of Deputy Sheriff.
>
> If, in the estimation of the Sheriff's Department Administration, I am not performing up to the standards expected, I will be separated from the Milwaukee County Sheriff's Department during probation.

Plaintiff's Exhibit 18 at W.

2. In 1993, Betty Smith, still a probationer, was scheduled to work eight-hour shifts on March 21 (Sunday), 22 (Monday), 23 (Tuesday), 26 (Friday) and 27 (Saturday).

3. At the end of her shift on Tuesday, March 23, Betty Smith had completed 2072 hours of her 2080–hour probationary period.

4. On Wednesday, March 24, a supervisor asked Betty Smith to work an eight-hour shift that day.

5. Betty Smith worked eight hours on Wednesday, March 24. According to a "custom" among deputy sheriffs, she filled out her time sheet by designating the Wednesday hours as overtime, even though she had not completed a forty hour week.

6. Under the terms of the "Memorandum of Agreement Between Milwaukee Deputy Sheriffs' Association and County of Milwaukee" and the Milwaukee County Ordinances, the eight hours Betty Smith worked on March 24, 1993, were properly classified as straight time.

7. On March 24, 1993, Defendant Artison, acting under state law in his capacity as Sheriff of Milwaukee County, signed an order terminating Betty Smith effective March 25, 1993. The Order stated:

DEPARTMENTAL ORDER NO. 626

March 24, 1993

RE: TERMINATION DURING PROBATION

Effective March 25, 1993, Deputy Sheriff Betty A. Smith has been separated from the Department prior to the completion of her probationary period.

APPROVED:

---

RICHARD E. ARTISON, SHERIFF

Milwaukee County, Wisconsin

---

Defendants' Exhibit 110.

8. On March 25, 1993, Betty Smith was called to the office of Defendant Jeffrey Zens who handed her the Sheriff's order terminating her. She was asked to collect her belongings and was escorted from the building.

9. Betty Smith had worked 2080 hours of straight time at the time her termination took effect and, consequently, had completed her probationary period.

10. The Sheriff should have known that Betty Smith had completed her probationary hours at the end of her work day on March 24, 1993.

11. Betty Smith did not receive notice or an opportunity to be heard prior to the effective date of her termination.

12. Defendant Richard Artison acted with deliberate indifference as to whether his actions would deprive Betty Smith of her right to due process.

## VII. *CONCLUSIONS OF LAW*

1. The court has jurisdiction over the subject matter of Betty Smith's claims for violations of her civil rights. *See* 28 U.S.C. §§ 1331 & 1343.

2. The Fourteenth Amendment to the United States Constitution provides that:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. Amend XIV.

3. To obtain monetary relief under 42 U.S.C. § 1983, for deprivation of the Fourteenth Amendment right to procedural due process, a plaintiff must prove that she was deprived of a property interest under color of state law without due process. *See Chaney v. Suburban Bus Division of the Regional Transportation Authority,* 52 F.3d 623, 627 (7th Cir.1995).

4. If a plaintiff has a property right in her employment, a defendant cannot deprive her of this right without adequate due process. *See Fittshur v. Village of Menomonee Falls,* 31 F.3d 1401, 1405 (7th Cir.1994).

5. A property interest in a job is created and "defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Flynn v. Kornwolf,* 83 F.3d 924, 926 (7th Cir.), *cert. denied,* — U.S. ——, 117 S.Ct. 301, 136 L.Ed.2d 219 (1996). The source of the interest must "secure certain benefits" and "support claims of

entitlement to those benefits." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709.

6. State civil service rules, county ordinances and labor agreements can create a property interest in employment by which the employee with a legitimate claim of entitlement to such employment is terminable only for cause. *See Flynn v. Kornwolf,* 83 F.3d 924, 926–27 (7th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 301, 136 L.Ed.2d 219 (1996).

7. A Milwaukee County deputy sheriff's property interest in her job is governed by the Milwaukee County Civil Service Rule IV, Section 5—Probation which provides, in relevant part, that:

> Section 5—PROBATION. All persons certified from original or promotional eligible lists, shall be on probation for the first 1040 hours of straight time hours paid, excluding overtime, unless further extended by the Director of Human Resources for a period not to exceed an additional 1040 hours of straight time hours paid, excluding overtime, except that for classifications of Deputy Sheriff, Deputy Sheriff I, and *Juvenile Correctional Worker, Juvenile Correctional Worker–Bilingual (Spanish), Juvenile Correctional Worker Supervisor and** all Correction Officers I, including but not limited to Correction Officer I, Correction Officer I (Boiler Operation), Correction Officer I (Clerical), Correction Officer I (Recreation), and Director of Training, (International Health), probationary period shall be for the first 2080 hours and Equipment Operator and Firefighter and Equipment Operator In Charge the probationary period shall be the first 2,919.8 hours of straight time hours paid, excluding overtime. For *represented and* nonrepresented supervisory classification plan appearing in Chapter 17 of the General Ordinances of the County of Milwaukee, the probationary period shall

be for the first 2080 hours of straight time hours paid, excluding overtime.

> . . . .

> If any probationer shall: fail to obtain the necessary licensing or professional certification within a reasonable length of time; or be found incompetent or unqualified, in the opinion of the appointing authority, to perform the duties of the position to which he/she has been certified; the appointing authority may separate the probationer prior to the completion of the probationary period and shall submit to the Department of Human Resources a written statement of his or her reasons for such separation, together with such other performance evaluation reports as the Department of Human Resources may require. The retention of a probationer in the service after the expiration of the probationary period shall be equivalent to his or her final and absolute appointment. Upon the separation of a probationer, the Director of Human Resources may at his/her discretion restore the probationer's name to an appropriate eligible list with status similar to that held prior to appointment, and the employe may thereafter be certified from such eligible list to any department other than that from which he or she was separated, and if an appointment is made, such appointment shall again be probationary for the full period indicated for original, promotional, or reinstatement probationary periods. Any person aggrieved by the action of the Director of Human Resources may appeal such action to the Civil Service Commission.

Plaintiff's Exhibit 18 (footnote omitted).[6]

7. The classification of a Milwaukee County deputy sheriff's work hours as "straight time" or "overtime" is governed by the following provisions:

> (a) Section 17.16 Overtime Compensation of "General Ordinance of the County of

---

**6.** The parties did not address the language in this rule that provides that: "The retention of a probationer in the service after the expiration of the probationary period shall be equivalent to his or her final and absolute appointment."

Smith's probationary period had expired, but she had not been "retained" prior to her termination. Thus, she did not achieve her final appointment until after the Personnel Board ordered that she be reinstated. This situation, while ambiguous, does not obviate the due process violation because the rule also requires that a probationer be separated "prior to the completion of the probationary period...." Smith's separation was not prior.

Milwaukee Providing for Standardization of Wages, Classification and Employment Practices" provides, in relevant part that:

This section shall be applied in the following manner and consistent with collective bargaining agreements and State and Federal Regulations: ... (b) the excess hours for which overtime is to be paid or compensated, shall be those hours credited after eight hours per day or forty hours per week....

Plaintiff's Exhibit 20.

(b) Section 3.02 Overtime(1) of the "Memorandum of Agreement Between Milwaukee Deputy Sheriffs' Association and County of Milwaukee" provides, in relevant part that:

3.02 **OVERTIME.** (1) All time credited in excess of 8 hours per day or 40 hours per week shall be paid in cash at the rate of 1½ times the base rate, except that employes assigned to continuous jury sequestration shall be paid 16 hours at their base rate and 8 hours at the rate of 1½ times the base rate for each 24–hour period of uninterrupted duty, and except that first shift hours worked in excess of 40 per week shall be paid at the rate of 1½ times the base rate.

Plaintiff's Exhibit 7.

8. Once an employee has established the existence of a property interest, the employee ordinarily has the right to notice and a reasonable opportunity to respond prior to termination. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985).

9. By operation of law, Betty Smith had completed her probationary period at the end of her eight-hour shift on March 24, 1993.

10. To state a cognizable claim based on the deprivation of due process, the conduct must be grossly negligent, deliberately indifferent, or intentional. *See generally Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88

L.Ed.2d 662 (1986). *See also Howard v. Grinage,* 82 F.3d 1343, 1350 (6th Cir.1996).

■ 11. Defendant Richard Artison, acting with deliberate indifference, violated Plaintiff Betty Smith's Fourteenth Amendment right to procedural due process when he terminated Smith's employment without notice or an opportunity to be heard on March 25, 1993.

## VIII. DISCUSSION

At trial there was little dispute that Betty Smith had finished her probationary hours when she was fired by Defendant Artison without notice or an opportunity to be heard. The only question was whether then-Sheriff Artison knew or should have known that Smith was no longer a probationary employee when her termination became effective. Smith herself had written down her final eight-hour shift as "overtime," so she initiated the error. However, this error was readily apparent to payroll clerk Rosalyn Schmitt who tried to correct it. Given the plain language of the labor agreement and the Milwaukee County Civil Service Rules and Ordinances and the ready availability of the payroll records, Sheriff Artison should have known that Betty Smith had completed 2080 hours of straight time on March 24, 1993. The court found that Defendant Artison acted with deliberate indifference to Smith's rights when he failed to discover this material information. The Defendants did not call Artison to testify, so the record contains no explanation for his belief that Smith was still a probationary employee when he attempted to separate her from service. The testimony indicated that employees of the Sheriff's Department purposely allowed the hours to continue to be classified as overtime until the Personnel Board ordered an audit of Smith's timesheets to be conducted and reclassified the eight hours as straight time.[7]

In their summation, the Defendants argue that even though Smith was terminated with-

---

7. Before trial, the Defendants argued that "customs" had evolved whereby overtime was being paid to deputy sheriffs over and above what was called for by the labor agreement or allowed by civil service rules and that, therefore, Smith's final eight hours of work could legitimately have been classified as overtime. By the time of trial, the Defendants appeared to have wisely abandoned this line of defense.

out a due process hearing, the termination was a random and unauthorized act and that post-termination procedures provided her with sufficient due process. *See Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

When tenured employment is at stake, a pre-termination hearing must be held except in an exceptional case where prior notice was not feasible or an emergency or dangerous situation warrants an immediate dismissal. *See Jones v. City of Gary, Indiana,* 57 F.3d 1435, 1441–44 (7th Cir.1995); *Schultz v. Baumgart,* 738 F.2d 231, 236–38 (7th Cir. 1984); *Parrett v. City of Connersville,* 737 F.2d 690, 697 (7th Cir.1984), *cert. dismissed,* 469 U.S. 1145, 105 S.Ct. 828, 83 L.Ed.2d 820 (1985). No such situation existed in the Smith case where the termination occurred months after Smith's insubordinate conduct. Even though Smith had a full panoply of post-termination grievance and administrative remedies available, due process required pre-termination notice and an opportunity to respond. *See Chaney v. Suburban Bus Division of the Regional Transportation Authority,* 52 F.3d 623, 628–30 (7th Cir.1995); *Schultz v. Baumgart,* 738 F.2d 231, 237 (7th Cir.1984).

The goal of a pre-termination hearing is to minimize the risk of substantive error, to assure fairness in the decision-making process, and to assure that the individual affected has a participatory role in the process. *See Howard v. Grinage,* 82 F.3d 1343, 1349 (6th Cir.1996). The value of achieving this goal is clearly illustrated in Smith's case where even a cursory check of Smith's timesheets and the relevant provisions of the work rules would have shown that she had completed her probationary period. The administrative proceedings and this lawsuit could have been avoided and Smith would not have been deprived of her substantial interest in continued employment for which Defendant Artison must now account in damages.

## IX. *DAMAGES*

█ In *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), the Supreme Court held that, where a plaintiff's claim is based upon a breach of procedural due process, actual damages may not be presumed from the mere fact of violation. *Id.* at 260–67, 98 S.Ct. at 1050–54. During her testimony, Betty Smith listed a wide variety of suffering and losses she attributes to the manner of her termination. She claims to have suffered mental distress and financial losses due to a delay in her planned purchase of a home and the forced sale of her personal possessions at garage sale prices. She testified that she had lost the ability to enjoy life and had become fearful. Some of her testimony appeared to be exaggerated or contradictory. On one hand she testified that there were times when she could not afford food for herself and her son, but on the other hand, she stated that her anxiety led her to buy cigarettes and start chain smoking after being a nonsmoker for fifteen years. She went on to say that she had become overly concerned for her son and insisted on driving him everywhere. At the same time, she stated that she has been working third shift at the jail and leaving her son alone during the evening, even though she has had the opportunity to switch to another shift.

While she seeks $8,455.00 for these losses, Smith has no records, bills, or any other specific information supporting her miscellaneous damage claims for replacing her furniture, tools, clothing or appliances, or for the delay in closing on a home. The court finds that none of these losses is directly attributable to the deprivation of due process and, even if any were, the Plaintiff has failed to support her claims with anything more than vague and conflicting testimony. Therefore, no damages will be awarded for any of these items.

In addition to these expenses, Smith seeks the amount of unemployment compensation that was deducted from her recovery of back pay. During the administrative proceedings, the Milwaukee County Personnel Board found that Smith had lost $6,743.87 in gross back pay, but had received $2,430.00 in un-

employment compensation and $151.77 in overtime pay for the disputed eight hours. Therefore, the Board deducted these amounts and calculated that Smith should receive a total of $5,595.56 as gross back pay. After bringing a motion to compel, Smith recovered this amount in December of 1993.

The Plaintiff contends that deducting the unemployment compensation violates the collateral source rule. However, she offers no authority for the proposition that the collateral source rule applies to out-of-court settlements. Because this court is not being asked to award back pay, it will not augment the Personnel Board's award. The Seventh Circuit has ruled that the deduction of unemployment compensation is a matter of discretion for the trial court. *See Syvock v. Milwaukee Boiler Manufacturing Company, Inc.,* 665 F.2d 149, 161 (7th Cir.1981), *overruled on other grounds* by *Coston v. Plitt Theatres, Inc.,* 860 F.2d 834 (7th Cir.1988). Thus, if this issue were properly before this court, the court would not restore the offset because the Plaintiff has already been made whole. As the Second Circuit has stated: "[W]e see no compelling reason for providing the injured party with double recovery against the responsible party ... we are not in the business of redistributing the wealth beyond the goal of making the victim of discrimination ... whole." *EEOC v. Enterprise Association Steamfitters Local No. 638 of U.A.,* 542 F.2d 579, 592 (2nd Cir.1976), *cert. denied sub nom. Rios v. Enterprise Association Steamfitters, Local No. 638 of U.A.,* 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977).

Smith also seeks what she calls "prejudgment interest" of $219.80 which represents interest imputed to the back pay from June 8, 1993 through December 16, 1993 (the time between Smith's ordered reinstatement and the actual reception of the back pay) at 8% interest. No citations or factual documentation accompanies this request. Because this court is not awarding back pay in its judgment, it will not award "prejudgment interest" on the back pay.

8. Because Smith did not prevail on her substantive due process, conspiracy and punitive damages claims, she cannot be awarded costs or attorney fees connected with these claims. *See*

■ Smith says that her depression, fears and anxiety led her to seek one session of psychological counseling shortly after her medical benefits were reinstated and several additional sessions after she received the Defendants' motion for summary judgment which she said disturbed her. According to Smith, she stopped seeing the psychologist because she feared the Department would find out and obtain her records in connection with this lawsuit. Although the testifying psychologist suggested that a year or two of therapy might be helpful to Smith, the Plaintiff indicated that she would be afraid to seek additional treatment. Therefore, it would be futile to award any sum for future medical expenses.

Nevertheless, the court finds that Betty Smith did suffer mental distress as a direct result of her termination without due process and the subsequent slow pace of recovering her back pay and benefits from Milwaukee County. Mental and emotional distress is compensable in a section 1983 case. *See Carey v. Piphus,* 435 U.S. 247, 264, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978); *Dishnow v. School District of Rib Lake,* 77 F.3d 194, 199 (7th Cir.1996). The court finds that Four Thousand and Five Hundred Dollars ($4,500.00) would compensate the Plaintiff for this injury. She is also entitled to costs and attorney fees incurred solely in prosecuting her procedural due process claim.[8] *See* 42 U.S.C. § 1988.

## X. *PUNITIVE DAMAGES*

■ When a plaintiff receives an award of actual damages, punitive damages may also be awarded if the plaintiff can prove that the defendant acted with malice or with callous indifference to her federally protected rights. *See Smith v. Wade,* 461 U.S. 30, 57, 103 S.Ct. 1625, 1640–41, 75 L.Ed.2d 632 (1983); *Bogan v. Stroud,* 958 F.2d 180 (7th Cir.1992). Smith has not met her burden of proving that Defendant Artison acted with the requisite intent. Therefore, punitive damages are denied.

*generally Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). *See also Briggs v. Marshall,* 93 F.3d 355, 361 (7th Cir. 1996).

### ORDER

Based upon the Findings of Fact and Conclusions of Law set forth above in compliance with Federal Rule of Civil Procedure 52, the court ORDERS that the Clerk of Court shall enter a final judgment in this action as a separate document. *See* Federal Rule of Civil Procedure 58. This judgment shall provide that:

This action came on for trial before the court, the Honorable Thomas J. Curran, District Judge, presiding, and the issues having been duly tried and a decision having been duly rendered,

IT IS ORDERED AND ADJUDGED

that the Plaintiff Betty Smith recover of Defendant Richard Artison, in his personal capacity, the sum of Four Thousand Five hundred Dollars and No Cents (4,500.00) with postjudgment interest thereon at the rate provided by law.

IT IS FURTHER ORDERED that, within twenty (20) days of the date of this Order the Plaintiff shall submit her fee and cost petition along with a memoranda of law supporting each item requested. Any item not supported by relevant legal authority will be summarily rejected. The Defendant shall serve and file a response within seven (7) days of the filing of the Plaintiff's petition. This will complete the briefing of this matter.